**In re Betty Jean GURLEY, Debtor.**

**Betty Jean GURLEY, Plaintiff,**

**v.**

**George E. MILLS, Jr., Chapter 7 Trustee, Defendant.**

**Bankruptcy No. 97–35255–L.**
**Adversary No. 97–1253.**

United States Bankruptcy Court,
W.D. Tennessee,
Western Division.

May 11, 1998.

Order Denying Rehearing June 15, 1998.

John R. Dunlap, James E. Bailey, III, Memphis, TN, for Betty Jean Gurley.

James E. Foster, Orlando, FL, for George E. Mills, Jr., Trustee.

Susan Coppedge, Washington, DC, for Environmental Enforcement Division.

Sean M. Haynes, Memphis, TN, for U.S. Trustee.

## MEMORANDUM OPINION

JENNIE D. LATTA, Bankruptcy Judge.

Before the Court are the Debtor/Plaintiff's "Amended Complaint to Compel Turnover, for Damages for Violation of the Automatic Stay and for Injunction Prohibiting Transfer of Assets Held by Defendant," filed November 7, 1997; "George E. Mills, Jr., The Chapter 7 Trustee of the Estate of William M. Gurley, Motion for Relief from the Automatic Stay," filed November 17, 1997; "George E. Mills, Jr.'s Motion to Abstain or in the Alternative Abate," filed November 17, 1997; and the "Objection to Motions for Relief from Automatic Stay and to Change Venue filed by George E. Mills, Trustee," filed November 25, 1997, by George D. McCrary, creditor. As each of these matters arises out of common issues of fact, the Court conducted consolidated hearings on February 11–13, 1998, and March 4–5, 1998. Appearing before the Court were John R. Dunlap and James E. Bailey, III, attorneys for the Debtor/Plaintiff, Betty Jean Gurley; James E. Foster, attorney for the Defendant, George E. Mills, Jr., Chapter 7 Trustee for William M. Gurley; Sean M. Haynes, attorney for Ellen B. Vergos, United States Trustee for Region 8; and Susan Coppedge, attorney for the Environmental Enforcement Division, Environment and Natural Resources Division, United States Department of Justice. The Court heard testimony from Betty Jean Gurley, Jim Dorris, Ed Tillman, Claude Bell, James Roger Fenn, and Robert Harris, and considered the pleadings, stipulations, exhibits and arguments offered by the Plaintiff and Defendant. The following constitutes the Court's findings of fact and conclusions of law in accordance with FED.R.BANKR.P. 7052.

## I. ISSUES

The issues to be decided are (1) whether this Court should abstain from hearing the adversary proceeding or abate the bankruptcy case pending the conclusion of all litigation before the Orlando bankruptcy court; (2) whether the Trustee may be compelled to turn over to the Debtor certain property which was the subject of the Memorandum Opinion and Amended Judgment of the Orlando bankruptcy court; (3) whether the Trustee is entitled to relief from the automatic stay; and (4) whether the Trustee willfully violated the automatic stay.

## II. JURISDICTION

The Court has jurisdiction over the motion for relief from the automatic stay pursuant to 28 U.S.C. § 1334(b), and it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G). The Court has jurisdiction over Adversary Proceeding No. 97–1253 pursuant to 28 U.S.C. § 1334(b), and it is a core proceeding pursuant to § 157(b)(2)(E). The Trustee has requested that the Court abstain from hearing the adversary proceeding.

## III. FACTS AND PROCEDURAL HISTORY

Betty Jean Gurley filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code on October 20, 1997. Among her assets, the Debtor listed certain bank accounts, vehicles, office equipment, manufacturing equipment and real property all used in connection with a business known as The Moltan Company ("Moltan").

Moltan is a business organized in the 1970s by William M. Gurley, the Debtor's husband,

for the purpose of mining and distributing clay used in the production of cat litter and other products. Moltan has offices located at 3555 Moltan Drive in Memphis, Shelby County, Tennessee. There are Moltan plants in Middleton, Hardeman County, Tennessee, and Churchill County, Nevada. In 1989, Mr. Gurley attempted to convey Moltan to the Debtor by a deed of gift.

Mr. Gurley filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, on July 26, 1995, Case No. 95–03833–6B7. Within Mr. Gurley's Chapter 7 case, the United States of America ("USA") and the Trustee filed adversary proceedings. The USA filed a thirteen-count complaint against Mr. Gurley seeking a denial or revocation of his discharge.[1] The Trustee filed a complaint against Mrs. Gurley, the Debtor here, seeking recovery of certain assets allegedly fraudulently transferred by Mr. Gurley to his wife between 1989 and 1992. The two complaints were consolidated for trial.

Bankruptcy Judge Arthur B. Briskman conducted an eight-day trial on the consolidated proceedings between May 7 and June 12, 1997, resulting in the issuance of a Memorandum Opinion dated August 15, 1997 (the "Memorandum Opinion"), followed by a Judgment dated August 15, 1997, and an Amended Judgment dated September 16, 1997 (the "Amended Judgment"). Judge Briskman entered judgment in favor of the USA and denied the discharge of Mr. Gurley. With respect to the Trustee's complaint, Judge Briskman entered judgment in part in favor of the Trustee and in part in favor of Mrs. Gurley. Judge Briskman found that some of the transfers made by Mr. Gurley

fell within the applicable statute of limitations for fraudulent conveyances and thus could be recovered pursuant to 11 U.S.C. § 544(b).[2] The balance of the transfers Judge Briskman found fell outside the applicable limitations period. Nevertheless, Judge Briskman found that Mr. Gurley holds an equitable interest in all property transferred by Mr. Gurley to Mrs. Gurley because Mrs. Gurley holds the property as nominee for her husband. In the alternative, with respect to Moltan, Judge Briskman found that the deed of gift was ineffective because it was never delivered to Mrs. Gurley and because Mr. Gurley did not have the requisite donative intent to divest himself of all dominion and control over the company. The Trustee sought and obtained an Amended Permanent Injunction on September 12, 1997, enjoining the Debtor, *inter alia,* from withdrawing any monies from any of the accounts maintained at Union Planters Bank, NBC Capital Markets Group, Inc., Commerce Investment Corporation, SunTrust Bank, or First Tennessee Bank. The Debtor timely filed a notice of appeal from the Amended Judgment and Amended Permanent Injunction but did not seek a stay of the judgment pending appeal. On or about September 26, 1997, the Trustee obtained an order from the Orlando bankruptcy court authorizing him to operate Moltan.

The Debtor filed her voluntary petition commencing this bankruptcy case on October 20, 1997. Notice of the filing of the petition was given to Mr. James E. Foster, attorney for the Trustee, on October 20, 1997. On October 21, 1997, the Trustee obtained another order authorizing him to operate Moltan. The order was signed by Judge Briskman on October 23, 1997.

---

**1.** Underlying the USA's complaint was a civil action filed November 18, 1987, by the Environmental Protection Agency ("EPA") against W.M. Gurley; Mrs. Gurley; their son, Larry Gurley; and others arising out of violation of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601, *et seq.* The EPA dismissed Mrs. Gurley as a defendant in June 1990. Following trial, the United States District Court, Eastern District of Arkansas, entered judgment in favor of the USA on March 26, 1992, holding W.M. Gurley and the other remaining defendants jointly and severally liable for clean-up costs in the amount of

$1,786,502.95. *United States v. Gurley Refining Co.*, 788 F.Supp. 1473 (E.D.Ark.1992).

**2.** Section 544(b) provides:

> The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

11 U.S.C. § 544(b).

On November 6, 1997, the Trustee filed a motion to transfer venue of Mrs. Gurley's bankruptcy case to the Orlando bankruptcy court. The motion was denied on December 11, 1997.[3]

## IV. DISCUSSION

### A. Motion for Abstention or to Abate Adversary Proceeding

The Trustee argues that this Court should abstain from hearing the issues raised by the Debtor's amended complaint on the basis that the Debtor seeks to use this adversary proceeding as an alternative to the posting of a supersedeas bond and for obtaining relief not otherwise obtainable through the appeal. The Trustee alleges that the adversary proceeding is duplicative of the issues raised and tried in the Orlando bankruptcy court. In the alternative, the Trustee requests that the Court abate this case pending the conclusion of all litigation before the Orlando bankruptcy court, or abate this adversary proceeding until the conclusion of the appeals of the decision of the Orlando bankruptcy court.[4]

■ The Court does not agree that the present adversary proceeding merely duplicates issues decided by Judge Briskman. Indeed, the issues that this Court must decide did not exist until the bankruptcy estate of Betty Jean Gurley came into existence on October 20, 1997. This Court will not consider issues decided by Judge Briskman, but rather will determine what effect shall be given to Judge Briskman's order in light of the petition filed by Mrs. Gurley. Judge Briskman has no jurisdiction to decide the issues raised in the present adversary proceeding which require the determination of what property is property of the Debtor's bankruptcy estate. That decision will turn in part, but not entirely, on interpretation of the Memorandum Opinion and Amended Judgment. In this sense Judge Briskman's order is no different from any other judgment rendered against a debtor prior to the filing of a bankruptcy petition.

■ Further the Court does not find it to be in the best interest of the Debtor and the creditors that the Court suspend all proceedings in this case pending the outcome of the Debtor's appeals from the orders of the Orlando bankruptcy court. Section 305(a)(1)[5] requires the moving party to show that both "the interests of the creditors and the debtor would be better served" by the requested suspension of proceedings. 11 U.S.C. § 305(a)(1). *See* 2 LAWRENCE P. KING, COLLIER ON BANKRUPTCY ¶ 305.02[1] (15th ed. rev.1997) (hereinafter COLLIER). *See also In re Donaldson Ford, Inc.,* 19 B.R. 425, 432 (Bankr.N.D.Ohio 1982); *Matter of First Dade Corp.,* 17 B.R. 887, 889 (Bankr. M.D.Fla.1982); *Matter of WPAS, Inc.,* 6 B.R. 44, 47 (Bankr.M.D.Fla.1980). The Debtor opposes the requested relief. Generally, "[d]ebtors should be permitted an opportunity to reorganize and section 305(a)(1) is not a basis for impinging upon or abridging that right." 2 COLLIER ¶ 305.02[2][d]. The application of section 305 "is only proper if the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case." *WPAS, Inc.,* 6 B.R. at 47 (citing H.R. 95–595, 95th Cong. 2nd Sess. (1977) U.S.Code Cong. & Admin.News, 1977, p. 5963; S.Rep. 95–989, 95th Cong. 2nd Sess. (1978) U.S.Code Cong. & Admin.News, 1978, p. 5787). *See Donaldson Ford,* 19 B.R. at 434. Further, a decision to dismiss the case or to suspend all proceedings, or not to dismiss or suspend, is not reviewable by appeal or otherwise. As a result, section 305 should be utilized sparingly and not as a substitute for a motion to dismiss under section 1112(b). *See Donald-*

---

3. *In re Gurley,* 215 B.R. 703 (Bankr.W.D.Tenn. 1997).

4. In his motion, the Trustee further requested in the alternative that the Court abate this adversary proceeding until the motion for change of venue was ruled upon. As indicated, the Court denied the motion for change of venue on December 11, 1997.

5. Section 305(a)(1) provides:

The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—
(1) The interests of creditors and the debtor would be better served by such dismissal or suspension.

11 U.S.C. § 305(a)(1).

*son Ford,* 19 B.R. at 435. Therefore, this Court will not abstain or abate these proceedings pursuant to section 305.

## B. Complaint for Turnover

### 1. Introduction

The Debtor seeks to have the Trustee return to her all property used by Moltan as well as bank accounts and certificates of deposit frozen pursuant to an Amended Permanent Injunction issued by the Orlando bankruptcy court on September 12, 1997. The Debtor asserts that these assets are property of her bankruptcy estate and will be used by her in the formulation of her plan of reorganization. The Trustee argues that the assets are not property of this bankruptcy estate based upon the Amended Judgment entered by Judge Briskman, or in the alternative that the Debtor holds only bare legal title to the assets, and thus may not use the assets in her plan.

> Bankruptcy Code Section 542(a) provides:
>
> Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

**6.** In Chapter 11 cases, the debtor in possession enjoys substantially all the rights and powers and performs substantially all the duties of a trustee. 11 U.S.C. § 1107.

**7.** Section 541(d) provides:

Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

11 U.S.C. § 541(d).

11 U.S.C. § 542(a). Property that a trustee [6] may use, sell or lease under section 363 is property of the estate. Section 363(c) provides that when the business of a debtor is authorized to be operated, a trustee may sell, lease, or use property of the estate in the ordinary course of business without notice or a hearing. 11 U.S.C. § 363(c)(1).

Pursuant to Section 541, the bankruptcy estate is comprised of all legal or equitable interests of the debtor in property as of the commencement of the case. 11 U.S.C. § 541(a)(1). The Trustee argues that by virtue of the Amended Judgment, the Debtor held at most bare legal title to the assets which were the subject of the judgment, and thus they should be excluded from her bankruptcy estate under section 541(d).[7] Additionally, the Trustee argues that the Court should not direct the turnover of the assets because the interest of the Debtor in the subject assets are of inconsequential value or benefit to the estate. *See* 11 U.S.C. § 542(a). The Debtor argues that the assets should be included in her bankruptcy estate because as of the commencement of the case the Debtor held record title to all assets which are capable of registration and reported Moltan as a sole proprietorship owned by her in the joint federal income tax returns filed by the Gurleys for the years 1990 through 1996. The Court directed the parties to consider the impact of the strong arm powers provided to the Debtor as debtor in possession under section 544(a) upon the claims or interests of the Trustee.[8]

**8.** Section 544(a) provides:

The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such creditor exists;

(2) a creditor extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or

### 2. The Interests of the Trustee

The Court first considers what interests the Trustee holds in assets the Debtor seeks to recover. Judge Briskman's Memorandum Opinion describes the following transfers made by Mr. Gurley to Mrs. Gurley:

(1) Proceeds from the sale of Gurley Refining Company ("GRC") to Coastal Unilube in the amount of $4,600,000 were deposited to a joint account of Mr. and Mrs. Gurley at Union Planters Bank and later transferred to Mrs. Gurley's account at Union Planters Bank in 1990.

(2) Mr. Gurley attempted to transfer Moltan to Mrs. Gurley by deed of gift dated February 2, 1989.

(3) $1,280,000 in installments under a consulting agreement and covenant not to compete were deposited to Mrs. Gurley's account at Union Planters Bank.

(4) $2,999,143 in commercial paper was transferred from a Tax Free Trust account at Union Planters Bank to Mrs. Gurley's account at Union Planters Bank in 1989.

(5) $1,555,000 was transferred from Mr. and Mrs. Gurley's joint account at First Tennessee Bank to an individual account of Mrs. Gurley's in 1989.

(6) $7,500 in Memphis stockyard payments was transferred to Mrs. Gurley between December 1989 and January 1990.

(7) Numerous tracts of land in Hardeman County, Tennessee, and Churchill County, Nevada, related to Moltan were transferred to Mrs. Gurley.

(8) Joint deposits at SunTrust Bank in the amount of $2,000,000 were used to purchase a condominium in Mrs. Gurley's name located in Lake County, Florida, in 1989.

(9) $389,235 was transferred from a joint account into Mrs. Gurley's account at Union Planters Bank.

(10) $63,626 in proceeds of the so-called Mulvaney Promissory Note were transferred to Mrs. Gurley on September 19, 1990.

(11) $27,450 in proceeds from the sale of property located at Lot 1, Gurley Subdivision, Desoto County, Mississippi, were transferred to Mrs. Gurley on December 6, 1990.

(12) Real property located at Mount Diablo Meridian, Nevada, Township 23 N., Range 27 E., section 28, 32 (lots 8, 11, 12), and 33 were transferred to Mrs. Gurley in December 1992.

Memorandum Opinion, pp. 3–7.

Judge Briskman first considered whether the Trustee could recover a judgment pursuant to 11 U.S.C. § 544(b) for fraudulent transfers pursuant to Florida Statutes § 726.105 and/or 28 U.S.C. § 3304. For each of the three avenues of recovery available to the Trustee, Florida Statutes § 726.105(1)(a), 28 U.S.C. § 3304(b)(1)(A), or 28 U.S.C. § 3304(a)(1), Judge Briskman determined which specific transfers fell within the applicable statute of limitations. Of the three fraudulent conveyance provisions available to the Trustee, the longest reach-back period resulted from application of 28 U.S.C. § 3304(b)(1)(A).[9] Application of that statute resulted in the longest list of transfers subject to avoidance as a fraudulent conveyance. Judge Briskman found that the following property was fraudulently conveyed to the Debtor:

---

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a).

9. Section 3304(b)(1)(A) provides:
(b) Transfers without regard to date of judgment.—(1) Except as provided in section

3307, a transfer made or obligation incurred by a debtor is fraudulent as to a debt to the United States, whether such debt arises before or after the transfer is made or the obligation is incurred, if the debtor makes the transfer or incurs the obligation—
 (A) with actual intent to hinder, delay, or defraud a creditor.

28 U.S.C. § 3304(b)(1)(A).

(1) Nevada real property transferred to Mrs. Gurley on April 8, 1992.

(2) Coastal Unilube payments transferred to Mrs. Gurley on or after April 25, 1990.

(3) Mulvaney note proceeds transferred to Mrs. Gurley on September 19, 1990.

(4) Any funds deposited by [W.M. Gurley] into Mrs. Gurley's account at Union [Planters Bank] on or after April 25, 1990.

(5) Proceeds from the sale of Mississippi property transferred to Mrs. Gurley on or after December 6, 1990.

*See* Memorandum Opinion, p. 22, and Amended Judgment, pp. 2–3.

With respect to Moltan, Judge Briskman found that the purported transfer to the Debtor by deed of gift dated February 2, 1989, was ineffective. The deed of gift was given to an employee and placed in a filing cabinet located at the offices of Moltan. Mrs. Gurley was not told about the deed of gift. Mr. Gurley continued to exercise dominion and control over the company, and intended to from the time of the execution of the deed of gift. Memorandum Opinion, pp. 4–5. Judge Briskman acknowledged, however, that the Nevada and Tennessee employment and revenue agencies were notified of Mrs. Gurley's status as owner in April 1990 and Mrs. Gurley has reported Moltan as her business in the couple's joint federal income tax returns beginning with the return filed in March of 1991. Memorandum Opinion, p. 4.

In the alternative, with respect to all the transferred assets, Judge Briskman found that Mr. Gurley continued to exercise control over the assets. Mr. Gurley continued to manage all accounts, investments and interests of Mrs. Gurley. Thus, Judge Briskman declared Mr. Gurley to be the effective owner of the transferred assets; Mrs. Gurley was declared to hold the property as nominee for her husband; and Mr. Gurley was said to have "an equitable interest" in all the property transferred to Mrs. Gurley. Memorandum Opinion, pp. 24–25.

The Court has reviewed the cases relied upon by Judge Briskman in reaching this result. The first, *Towerhouse Condominium,* is a case in which the Florida Supreme Court impressed a resulting trust upon property purchased by a condominium association with funds provided by and with the approval of some, but not all, of the unit holders. *Towerhouse Condominium, Inc. v. Millman,* 475 So.2d 674 (Fla.1985). The second case relied upon by Judge Briskman, *Simpson,* is based upon the law of fraudulent conveyance. *Simpson v. United States,* Nos. 87–526–CIV–J–12, 87–837–CIV–J–12, 1989 WL 73212 (M.D.Fla., Apr. 6, 1989). The third case relied upon by Judge Briskman, *LiButti,* discusses whether the defendant may be found to be the nominee-owner of a race horse for the purpose of imposing a constructive trust upon the horse for the benefit of her father's creditor, the United States. *LiButti v. United States,* 107 F.3d 110, 124 (2d Cir.1997). The law of fraudulent conveyance could not provide a basis for recovery of transfers Judge Briskman had previously found to be outside the applicable statute of limitations. Thus it appears that the remedy applied by Judge Briskman is based upon the imposition of either a resulting trust or a constructive trust.

A resulting trust is said to arise when:

> a person makes or causes to be made a disposition of property under circumstances which raise an inference that he does not intend that the person taking or holding the property should have the beneficial interest in the property....

> There are three situations in which the trust that arises is properly called a resulting trust:

> (1) where an express trust fails in whole or part;

> (2) where an express trust is fully performed without exhausting the trust estate;

> (3) where property is purchased and the purchase price is paid by one person and at his discretion the vendor conveys the property to another person.

5 Austin Wakeman Scott & William Franklin Fratcher, The Law of Trusts § 404.1 (4th ed.1989) (hereinafter "A. Scott"). None

of these factual situations appears to be present with respect to the transfers to Mrs. Gurley. In the English Court of Chancery, however, a resulting use was imposed when land was gratuitously transferred and there was no declaration of uses. The transferee was said to hold the land on a resulting use for the transferor. 5 A. SCOTT § 404. This doctrine generally is not applied to modern trusts, especially where there is a recital of consideration in the instrument of transfer. 5 A. SCOTT § 405. Where there are gratuitous transfers of personal property, the presumption is that a gift was intended. *Id.* Where there has been a gratuitous transfer of either *real* or personal property, some courts will nevertheless consider the imposition of a *constructive trust* to prevent unjust enrichment of the transferee. *Id.*

■ A constructive trust arises when "a person who holds title to property is under a duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." 5 A. SCOTT § 440.1. A constructive trust is a restitutionary remedy. Generally the imposition of a constructive trust depends upon some wrongdoing by the transferee. The Tennessee Supreme Court has declared that:

> [A constructive trust] arises contrary to the intention and *in invitum*, against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and in good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy.

*Covert v. Nashville, C. & St. L. Railway*, 186 Tenn. 142, 152, 208 S.W.2d 1008, 1012 (1948) (quoting 54 AM. JUR., p. 167, § 218).

■ In addition, the imposition of a constructive trust may be an appropriate remedy when transfers are made in fraud of third persons, such as creditors of the transferor. 5 A. SCOTT § 470. It is said that "[w]here a person holding property transfers it to another in violation of his duty to a third person, the third person can reach the property in the hands of the transferee, unless the transferee is a bona fide purchaser." *Id.*

■ Closely related to the remedy of constructive trust is the equitable lien. An equitable lien is a judicially created security interest in property held by the defendant. 5 A. SCOTT § 463. Generally the imposition of a constructive trust or equitable lien requires identification of the actual property transferred in the hands of the transferee. Emily L. Sherwin, *Constructive Trusts in Bankruptcy*, 1989 UNIV.ILL.L.REV. 297, 307 (1989) (hereinafter "Sherwin"). One of the incidents of a constructive trust, however, is the ability to trace property transferred to other property for which it is exchanged or to follow the property into the hands of subsequent transferees. *Id.* at 303–05. The ability to trace property into the hands of third parties stops when the property reaches a bona fide purchaser. *Id.* at 305.

Judge Briskman nowhere uses the terms resulting trust, constructive trust, or equitable lien to describe the remedies he fashioned in his Memorandum Opinion and Amended Judgment. Judge Briskman appears to have concluded that even those transfers which were made outside the applicable statutes of limitations for recovery of fraudulent conveyances should be avoided for the benefit of Mr. Gurley's estate based upon Mr. Gurley's continued use and enjoyment of the transferred property. Generally, the remedy in such a case would be a judicial decree ordering the transferee to convey the property to the successful plaintiff.[10] Judge Briskman did not order Mrs. Gurley to convey any property to the Trustee, however. Indeed, on the day that Mrs. Gurley's petition was filed, there were scheduled for hearing in Orlando two motions filed by the Trustee to compel turnover of property, one addressed to the assets of Moltan and the other addressed to bank accounts and securities, a fact which tends to indicate that the Amended Judgment itself did not divest title to assets from Mrs. Gurley.

---

10. The *Scott* treatise notes that "[the constructive trustee] is not compelled to convey the property because he is a constructive trustee; it is because he can be compelled to convey it that he is a constructive trustee." 5 A. SCOTT § 462.

In addition, the list of property that the Trustee was enabled to recover consists not of property presently in the hands of Mrs. Gurley, but of property transferred to Mrs. Gurley many years ago "and its proceeds." In other words, Judge Briskman did not attempt to trace the transferred property to assets presently held by Mrs. Gurley. To be sure, some of the transferred property which is the subject of the Amended Judgment is capable of identification, such as "the Moltan Company" (which presents its own special problems) and certain interests in real property. The balance of the property transferred, however, consists of bank accounts and funds which are less easily traced to the current assets of the Debtor. It is clear that Judge Briskman intended to recognize an equitable interest in the disputed assets in favor of the Trustee, most closely resembling a constructive trust. That equitable interest is property of Mr. Gurley's estate.

### 3. Treatment of Constructive Trusts in Bankruptcy

Much has been written concerning the rights of a bankruptcy trustee versus those of the beneficiary of a constructive trust. *See, e.g.,* Carlos J. Cuevas, *Bankruptcy Code Section 544(a) and Constructive Trusts: The Trustee's Strong Arm Powers Should Prevail,* 21 SETON HALL L. REV. 678 (1991); Sherwin, *supra;* Alan G. Skutt, *Power of Trustee in Bankruptcy to Defeat Rights of Beneficiary of Constructive Trust Under § 544(a) of Bankruptcy Code (11 U.S.C.A. § 544(a)),* 96 A.L.R. Fed. 100 (1990). These articles are addressed to the question of whether a bankruptcy trustee can use her strong arm powers to avoid the equitable interest of a constructive trust beneficiary. All of the reported cases appear to address the issue of whether a trustee's strong arm powers will prevail over a previously undeclared constructive trust for the benefit of a particular creditor. Some courts have concluded that pursuant to section 541(d), where the debtor holds property under conditions in which state law would impress a constructive trust, the property never becomes property of the estate and the trustee's strong arm powers cannot defeat the creditor's equitable interest. *E.g., Sanyo Electric, Inc. v. Howard's Appliance Corp. (In re Howard's Ap-*

*pliance Corp.),* 874 F.2d 88 (2d Cir.1989); *Vineyard v. McKenzie (Matter of Quality Holstein Leasing),* 752 F.2d 1009 (5th Cir. 1985); *Foss Realty, Inc. v. Apogee Robotics, Inc. (In re Apogee Robotics, Inc.),* 205 B.R. 270 (D.Colo.1997); *McTevia v. Adamo (In re Atlantic Mortgage Corp.),* 69 B.R. 321 (Bankr.E.D.Mich.1987); *Bavely v. Ft. Thomas Bellevue Bank (Matter of Triple A Coal Co.),* 55 B.R. 806 (Bankr.S.D.Ohio 1985). In each of these cases, there had been no declaration of a constructive trust prior to the filing of a bankruptcy petition by the alleged constructive trustee. Other courts have found that section 541(d) does not limit a trustee's avoidance powers so that the trustee may avoid the previously undeclared equitable interest of a constructive trust claimant. *E.g., National Bank of Alaska, N.A. v. Erickson (In re Seaway Express Corp.),* 912 F.2d 1125, 1128 (9th Cir.1990); *Belisle v. Plunkett,* 877 F.2d 512, 515 (7th Cir.1989); *McAllester v. Aldridge (In re Anderson),* 30 B.R. 995, 1009–1010 (M.D.Tenn.1983); *Berger, Shapiro & Davis, P.A. v. Haeling (In re Foos),* 183 B.R. 149, 157 (Bankr.N.D.Ill. 1995).

The Sixth Circuit has not resolved the alleged conflict between sections 541(d) and 544(a). *See XL/Datacomp v. Wilson (In re Omegas Group, Inc.),* 16 F.3d 1443, 1448–1449 (6th Cir.1994); *Craig v. Seymour (In re Crabtree),* 871 F.2d 36, 37–38 (6th Cir.1989) (not addressing the federal bankruptcy issues because the case was decided under state law). In *Omegas Group,* however, the Sixth Circuit criticized the Fifth Circuit's analysis in *Quality Holstein Leasing* and "the vast majority of courts which have addressed bankruptcy claims based on a constructive trust." *Omegas Group,* 16 F.3d at 1449. The court reasoned: "[A] constructive trust is not really a trust. A constructive trust is a legal fiction, a common-law remedy that may only exist by the grace of judicial action." *Id.* As the court points out:

Nowhere in the Bankruptcy Code does it say, "property held by the debtor subject to a constructive trust is excluded from the debtor's estate." Title 11 U.S.C. § 541 defines the estate in bankruptcy broadly, including "all legal or equitable interests of

the debtor in property as of the commencement of the case," § 541(a), and "any interest in property preserved for the benefit of or ordered transferred to the estate under [the trustee's 'strong arm' or 'avoiding' powers as provided in] section 510(c) or 551 of this title," § 541(a)(4). *Id.* at 1448. The court further explained:

> The distribution of assets in a bankruptcy case is based on an identification of what assets and liabilities the debtor has "as of the commencement of the case," this being the exact moment the debtor files. A *debtor that served prior to bankruptcy as* trustee of an express trust generally has no right to the assets kept in trust, and the trustee in bankruptcy must fork them over to the beneficiary. However, a claim filed in bankruptcy court asserting rights to certain assets "held" in "constructive trust" for the claimant is nothing more than that: a claim. Unless a court has already impressed a constructive trust upon certain assets or a legislature has created a specific statutory right to have particular kinds of funds held as if in trust, the claimant cannot properly represent to the bankruptcy court that he was, at the time of the commencement of the case, a beneficiary of a constructive trust held by the debtor.

*Id.* at 1449 (citation omitted).

The Trustee argues that *Omegas Group* is not applicable in this case because in this case the Orlando bankruptcy court determined ownership of the disputed assets before the filing of Mrs. Gurley's petition. The Court notes, however, that what Judge Briskman did was to create a remedy to prevent unjust enrichment of Mrs. Gurley at the expense of Mr. Gurley's creditors. But for the Memorandum Opinion and Amended Judgment, there would be no question of the "ownership" of these assets. All records indicate that the assets are owned by Mrs. Gurley, even though Mr. Gurley exercises dominion and control over them.

▆▆▆ In dicta the *Omegas Group* court gives some indication concerning the treatment of assets impressed with a constructive trust before the filing of a bankruptcy petition. The court states, "We do not address

here property already impressed with a constructive trust by a court in a separate proceeding prepetition, *in which case the claimant would be entitled to priority (although not superpriority to the trustee) as a secured creditor by virtue of the judgment." Omegas Group,* 16 F.3d at 1443 (emphasis added). Read together with the balance of the opinion, this statement provides certain guidance in the treatment of assets subject to a constructive trust declared by a court of competent jurisdiction before a bankruptcy petition is filed by the constructive trustee. First, the court of appeals does not indicate that the subject property would be excluded from the bankruptcy estate. Second, the court of appeals indicates that the rights of the constructive trust beneficiary flow from the judgment which fashions the remedy. Third, the court of appeals indicates that the interest of the constructive trust beneficiary should be treated as a secured claim. Fourth, the court of appeals indicates that strong arm powers should not be available to defeat the interest of a constructive trust beneficiary provided that the constructive trust was declared prior to the filing of the bankruptcy petition.

▆▆▆ The Debtor seeks to avoid the equitable interest of the Trustee through the strong arm powers of section 544. The reach of the strong arm powers of the debtor in possession is determined with reference to state law. *E.g., Angeles Real Estate Co. v. Kerxton,* 737 F.2d 416, 418 (4th Cir.1984); see 4 COLLIER ¶¶ 544.05, 544.06, 544.08. As of the commencement of a voluntary Chapter 11 case, the debtor in possession has the rights and powers of a hypothetical judicial lien creditor, a creditor with execution returned unsatisfied, and a bona fide purchaser of real property. 11 U.S.C. § 544(a). A judicial lien is "a lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(36). While the debtor in possession is not charged with actual notice of adverse claims received while he was a prepetition debtor, the debtor in possession is charged with matters of record giving constructive notice of adverse claims. 5 COLLIER ¶ 544.03. According to the research of Professor Emily

L. Sherwin, "[w]ith respect to personal property, the prevailing rule of priority outside bankruptcy holds that a judgment [sic] lien is subject to a constructive trust or equitable lien on specific property." Sherwin, *supra* at 324. Professor Sherwin also notes that most bankruptcy courts hold that the debtor in possession's position as bona fide purchaser of real estate is subject to state law standards of constructive notice. *Id.* at 324–25.

▆ As of the commencement of this case, the Trustee was in possession of the real and personal property used by Moltan pursuant to the orders of the Orlando bankruptcy court permitting the Trustee to operate the business of Moltan. In addition, the Trustee had caused certified copies of the Amended Judgment to be recorded in Lake County, Florida; Churchill County, Nevada; and Shelby and Hardeman Counties, Tennessee prior to the filing of the Debtor's bankruptcy petition. The assets of Moltan are located in Churchill County, Nevada and Hardeman County, Tennessee.

▆ The Court has found no Tennessee case dealing with precisely the issue of the relative priorities of an execution creditor and constructive trust beneficiary. In *Renshaw v. First National Bank*, however, the Tennessee Court of Chancery Appeals made clear the rule that an execution creditor gets only the interest in property that the execution debtor owns and takes it "subject to all trusts under which the property rests in the hands of the debtor." 63 S.W. 194, 206 (Tenn. Ch.App.1900). This is so even where the equitable interest is not registered, because, according to that court, the registration laws are intended to protect the interests of creditors of the vendor of property, not the vendee. *Id.* The Debtor is in the position of vendee for purposes of applying the analysis of the *Renshaw* court, having received the property subject to the Trustee's unregistered equitable interest. The *Renshaw* court states:

> When property of the [vendee] is levied on, the rights of the execution creditor are governed by general principles of law, and not by the registration laws; and ... he gets no greater interest than his execution debtor owns, and the purchaser under such sale takes the property subject to all trusts existing against it in the hands of the debtor.

*Renshaw*, 63 S.W. at 206. Further, with respect to the real property which was the subject of the Amended Judgment, while the recording of certified copies of the Amended Judgment was ineffective to create judgment liens in favor of the Trustee except upon real property located in Florida,[11] the Trustee's

11. The Trustee caused a certified copy of the Amended Judgment to be registered with the register of deeds in Hardeman and Shelby Counties, Tennessee and Churchill County, Nevada before Mrs. Gurley filed her voluntary petition on October 20, 1997. The Trustee's attempt to create a judgment lien was ineffective, however. In Tennessee, judgments and decrees of courts of record in the State of Tennessee become judgment liens upon the debtor's lands from the time a certified copy of the judgment is registered in the county where the land is located. TENN. CODE ANN. § 25–5–101 (1997). In Nevada, a judgment rendered by any federal or state court of record in Nevada becomes a lien when a certified copy of the judgment is recorded in any county where the debtor's lands are located. NEV. REV. STAT. § 17.150 (1997).

A federal judgment may be registered in another federal district and thus subject to registration as if it were a judgment of that federal district, only "when the judgment has become final by appeal or expiration of the time for appeal or when ordered by the court that entered the judgment for good cause shown." 28 U.S.C.S.

§ 1963 (1997). The Amended Judgment has not become final after appeal, so any attempt by the Trustee to register it outside of the Middle District of Florida was ineffective to create a lien upon property. *See Air Transport Ass'n v. Professional Air Traffic Controllers Org. (In re Professional Air Traffic Controllers Org.)*, 699 F.2d 539 (D.C.Cir.1983). In *Air Transport Ass'n*, the court rejected the plaintiff's argument that it would be "irrational" for a federal judgment to be collectible where rendered but not collectible in other federal districts. ATA argued that section 1963 should be read together with Federal Rule of Civil Procedure 62 and Federal Rule of Appellate Procedure 8, such that registration of a judgment "could be withheld pending final disposition on appeal or expiration of time to appeal only when enforcement in the rendering forum has been stayed." *Id.* at 543. In that case, just as in this one, no stay of enforcement of the judgment had been obtained. In rejecting ATA's argument, the court explained:

> Registration is a rapid procedure that does not require the intervention of a judge.... It is an alternative that judgment creditors may use when the statute's terms are met. But regis-

recordation of the deeds was effective to give constructive notice of the equitable interests of the Trustee sufficient to prevent the debtor in possession from obtaining the status of a bona fide purchaser. *See In re Anderson*, 30 B.R. at 1013 (bankruptcy trustee as bona fide purchaser charged with notice of improperly acknowledged but recorded deed) (Tennessee law); *Blevins v. Johnson County*, 746 S.W.2d 678, 683 (Tenn.1988).

The Debtor cannot avoid the equitable interest of the Trustee. The disputed assets are property of the Debtor's estate subject to the equitable interest of the Trustee. The Court next considers whether the Trustee should be compelled to turn over the property to the Debtor.

### 4. Turnover of Property of the Estate

 The determination of whether the Trustee should be directed to turn over the assets of Moltan and the accounts of the Debtor requires the Court to consider a number of factors and circumstances. It is clear that the Amended Judgment did not by itself divest title to any property. Mrs. Gurley held legal title to all the disputed assets as of the commencement of her case. The only possible exception to this interpretation is the treatment provided for Moltan. One basis for Judge Briskman's ruling was that the original deed of gift of the assets of Moltan was not effective. If so, then Mr. Gurley has always been the owner of Moltan. This simple statement raises immediate difficulties, however. Moltan is a sole proprietorship, whether owned by Mr. Gurley or Mrs. Gurley. As such, it has no independent legal existence and owns no property. The assets used by Moltan consist of bank accounts and certificates of deposit, accounts receivable, inventory, equipment, furniture, vehicles, trademarks and other general intangibles, and real property. All of the real property and all of the vehicles used by Moltan are registered in the name of B.J.

Gurley d/b/a The Moltan Company. The inventory, equipment, furniture, and general intangibles are generally not capable of registration, but the Gurley's joint tax returns have indicated that Mrs. Gurley is the owner of that enterprise since 1991. Judge Briskman apparently recognized the problems created by Moltan, because with respect to Moltan, he ruled in the alternative that "[e]ven if the deed of gift was effective, the Debtor [Mr. Gurley] has an equitable interest in Moltan causing it to be property of the estate." *Memorandum Opinion*, p. 5.

Despite the fact that Moltan is not a separate *legal* entity, it is a distinct *business* entity. The Trustee admits that the value of the business entity exceeds the sum of its parts. Neither the Trustee nor Mrs. Gurley would benefit if the Court were to reach one result with respect to the personal property used by Moltan that is not capable of registration and another with respect to the real property and personal property that is registered in the name of Mrs. Gurley.

The Court further notes that this is not a case in which the property itself has some special or unique value to the claimant. The Trustee has let it be known that if permitted, he will sell the assets used by Moltan. As a liquidating Trustee, his interest is to reduce the assets of Mr. Gurley's estate to cash that can be distributed to Mr. Gurley's creditors. While it is true that the Trustee intends to sell the business as a going concern, nevertheless, the fact remains that the value of the business to the Trustee is as an asset to be sold to satisfy claims. If the Trustee were able to sell the assets for more than the claims against Mr. Gurley's estate, the surplus should belong to Mrs. Gurley. There is no reason to believe that the transfers between Mr. Gurley and his wife were ineffective as between them. *See Todkill v. Todkill*, 88 Nev. 231, 237, 495 P.2d 629, 632 (1972) (When a husband transfers title to his

---

tration does not displace the traditional route to enforcement of a judgment outside the territorial limits of the court in which the judgment was rendered:

> Section 1963 provides a cumulative remedy. It does not prevent a judgment creditor from bringing an independent action on his judgment. And it may be advantageous for him

to do this where the original judgment is not registrable due to the fact it has not become final by appeal or expiration of the time for appeal.

*Professional Air Traffic Controllers*, 699 F.2d at 544 (quoting 7B J. MOORE, MOORE'S FEDERAL PRACTICE § 1963 (2d ed.1982) (other citations omitted)).

separate property from his name into his wife's name, he is presumed to intend a gift to her, even though his original intent was to defraud creditors); *Burnham v. Burnham,* 343 So.2d 639, 640 (Fla.Dist.Ct.App.1977) (there is a presumption of a gift when husband has property placed in wife's name); *Kinkead v. State,* 202 Tenn. 164, 168, 303 S.W.2d 713, 715 (1957) (same). The Trustee's position is that of a creditor, rather than an owner. Mrs. Gurley, on the other hand, proposes to use the assets of Moltan to fund a plan of reorganization. Moltan has been a family business for some twenty years. Mrs. Gurley argues that she should be given an opportunity to propose a plan of reorganization.

This Court is guided in its determination by the decision in *United States v. Whiting Pools, Inc.* in which the Supreme Court held that the Internal Revenue Service could be compelled to turn over property on which it had levied an execution before the filing of the debtor's Chapter 11 bankruptcy petition. *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). In that case, the Supreme Court explained:

> By permitting reorganization, Congress anticipated that the business would continue to provide jobs, to satisfy creditors' claims, and to produce a return for its owners. Congress presumed that the assets of the debtor would be more valuable if used in a rehabilitated business than if "sold for scrap." The reorganization effort would have small chance of success, however, if property essential to running the business was excluded from the estate. Thus, to facilitate the rehabilitation of the debtor's business, all the debtor's property must be included in the reorganization estate.

*Id.* at 203, 103 S.Ct. at 2312–13 (internal citations omitted). The Supreme Court further noted that section 542(a) modifies the procedural rights of creditors to protect and satisfy their liens. *Id.* at 206, 103 S.Ct. at 2314. The Bankruptcy Code substitutes the right to adequate protection for the protec-

tion provided by possession of collateral. *Id.* at 207, 103 S.Ct. at 2315. Significantly, the Supreme Court indicated that its analysis depended in part on the reorganization context in which that turnover order was sought. *Id.* at 208 n. 17, 103 S.Ct. at 2315 n. 17. The Supreme Court expressed no opinion on whether the reach of section 542(a) would be as broad in connection with liquidation or adjustment of debt proceedings. *Id.*

The Court concludes that the Trustee should be directed to turn over to the Debtor the assets used by Moltan and the accounts which were the subject of the Amended Permanent Injunction. The interests of the Trustee may be adequately protected by the recognition of an equitable lien in his favor. The Court will recognize an equitable lien in an amount potentially equal to the aggregate of the following as of the commencement of the Debtor's bankruptcy case: (1) the value of Moltan as a business enterprise; (2) the value of Mr. Gurley's interests in real property transferred to the Debtor which were the subject of the Amended Judgment; and (3) $11,070,287 which is the aggregate amount of all funds transferred to the Debtor which were the subject of the Amended Judgment.

**5. Property Subject to Equitable Lien**

The Court next considers what property of the Debtor should be subject to the equitable lien. Clearly the equitable lien will attach to the assets used by Moltan, which the Court finds consist of the following:

(1) All furniture, fixtures, equipment and inventory located at the plant in Middleton, Hardeman County, Tennessee;

(2) All furniture, fixtures, equipment and inventory located at the plant in Churchill County, Nevada;

(3) Funds deposited in Union Planters Bank accounts number 0000200204, 0145475, 0000951560;

(4) Funds deposited to the Union Planters Bank "sweep account," number 299–1896; [12]

---

12. The Trustee was able to successfully demonstrate through the testimony of one of the Debt-

or's witnesses, Mr. Tillman, that the funds on deposit as of the commencement of the Debtor's

(5) Two certificates of deposit issued by Union Planters Bank pledged for the benefit of Moltan;

(6) Three certificates of deposit issued by Bank of America pledged for the benefit of Moltan;

(7) Accounts receivable of Moltan;

(8) All general intangibles used by Moltan, including all trademarks, whether registered or not, and all books and records of Moltan;

(9) The real property related to Moltan which consists of the plant sites in Hardeman County, Tennessee, more particularly described in the deed identified as Trial Exhibit P12 (hereinafter "Tr.Ex.") and the plant site in Churchill County, Nevada, more particularly described in the deeds identified as Tr.Ex. D16.

In addition, the equitable lien will attach to Mr. Gurley's interests in real property transferred to the Debtor, described in the Amended Judgment as:

(1) The survivorship interest of William Martin Gurley a/k/a W.M. Gurley in the real property located in Hardeman and Shelby Counties, State of Tennessee, as described in P.Ex. # 57–83 attached [P.Ex. # 57–83 attached to the Amended Judgment appear to include property described in Tr.Ex. P2–3, 7–11, 13–15, 17–20, and 40]; and

(2) Nevada real property located in Mount Diablo Meridian, Nevada, Township 23 N., Range 27 E., sections 28, 32 (lots 8, 11, 12), and 33 as more specifically described in [Tr. Ex. P22]; and

(3) Condominium located in Lake County, Florida.

Amended Judgment, pp. 3–4.

The Debtor will be permitted to use these assets in her reorganization efforts subject to the requirements of 11 U.S.C. §§ 363 and 1129.

## 6. Property Not Subject to Equitable Lien

With respect to transfers of funds described in the Amended Judgment, the Trustee attempted to trace only the proceeds from the Coastal Unilube sale to certain assets owned by the Debtor as of the commencement of this case. The Trustee made no attempt to trace other transfers. The Trustee asserts that the Debtor holds four Union Planters Bank certificates of deposit in the aggregate amount of approximately $731,000 and six National Bank of Commerce ("NBC") accounts in the approximate amount of $3,562,000 as nominee for Mr. Gurley because these accounts represent proceeds of the Coastal Unilube sale and related fees paid to Mr. Gurley.

In support of his position, the Trustee offered the testimony of Robert Harris, a certified public accountant employed by the United States Department of Justice in connection with Mr. Gurley's bankruptcy case. Mr. Harris testified that in his opinion, the four certificates of deposit at Union Planters Bank and five NBC accounts listed on the Debtor's schedules are assets of Mr. Gurley. Mr. Harris arrived at his conclusion in the following manner. On December 31, 1988, Mr. Gurley had liquid assets of $2.2 million and Mrs. Gurley had liquid assets of $341,-000. Gross proceeds from the sale of GRC were $13 million; Mr. and Mrs. Gurley received one-third, or $4.6 million, each. In addition, Mr. and Mrs. Gurley received payments from the Coastal Unilube consulting contract and non-compete agreement, consisting of a lump sum in 1989 and four annual payments thereafter. Mrs. Gurley received proceeds from the sale of certain other assets in 1994 and 1996. These additions to liquid assets are better illustrated in the form of a table:

bankruptcy case were Moltan funds. On August 13, 1997, the balance in the "sweep account" was $584.47. Between August 13 and September 15, 1997, the net sum of $425,000 was transferred from Moltan's operating account to the "sweep account." From September 15 through October 20, 1997, there were no additional deposits to the "sweep account." On October 20, 1997, there was a balance of $283,000 in the "sweep account." Based upon this analysis the funds on deposit in the "sweep account" are Moltan funds.

| YEAR | EVENT | | WMG | BJG |
|---|---|---|---|---|
| 12/31/88 | Liquid Assets | | $2,200,000 | $ 341,000 |
| 1989 | Coastal Unilube Sale | | 4,600,000 | 4,600,000 |
| 1989 | Coastal Unilube Consulting/Non–Compete Fee | | 1,020,000 | 900,000 |
| 1990 | Coastal Unilube Consulting/Non–Compete Fee | | 320,000 | 200,000 |
| 1991 | Coastal Unilube Consulting/Non–Compete Fee | | 320,000 | 200,000 |
| 1992 | Coastal Unilube Consulting/Non–Compete Fee | | 320,000 | 200,000 |
| 1993 | Coastal Unilube Consulting/Non–Compete Fee | | 320,000 | 200,000 |
| 1994 | Eminent Domain Proceeds | | | 384,000 |
| 1994 | Sale of Germantown Road Property | | | 640,000 |
| 1994 | Building and 54 Acres | | | 150,000 |
| 1996 | Gurley Tool & Die | | | 601,000 |
| | TOTAL | | $9,100,000 | $8,416,000 |

According to Mr. Harris, the total combined liquid assets of Mr. and Mrs. Gurley for the years 1989 through 1996 was $17,516,-000, rounded to $17,600,000. As of the commencement of Mrs. Gurley's bankruptcy case, Mr. Gurley had no liquid assets and Mrs. Gurley had liquid assets of approximately $4,200,000, consisting of the Union Planters Bank certificates of deposit and securities held at NBC. Thus Mr. Harris concluded that approximately $13,400,000 in liquid assets was spent by Mrs. Gurley during the period 1989–1996.

Mr. Harris assumed that in spending or investing $13,233,000 over the course of seven years, Mrs. Gurley spent her own funds first, before spending any of Mr. Gurley's funds. Based upon this assumption, all of Mrs. Gurley's liquid assets of $8,417,000 were exhausted and a portion of Mr. Gurley's liquid assets of $9,100,000 was also spent. Mr. Harris concluded, therefore, that the remaining liquid assets as reflected on the Debtor's Schedule B are proceeds of the funds transferred by Mr. Gurley to Mrs. Gurley.

Mr. Harris testified that the proceeds from the sale of GRC to Coastal Unilube were first deposited to the Union Planters "sweep account," number 299–1896, in 1989. In July 1992, a Treasury bill in the amount of $8,190,000 was received into another Union Planters account, the "safe-keeping" account, number 59–27113352. *See* Tr.Ex. D96. Mrs.

Gurley admitted that she purchased approximately $9 million worth of securities in 1991, but she could not identify the source or sources of funds for that purchase. Mr. Harris testified that based upon his review of the Gurleys' tax returns, bank statements, and other documents, Mrs. Gurley had no independent source for the purchase of the Treasury bill without using the funds Mr. Gurley transferred to her from the Coastal Unilube sale. The Debtor offered no testimony to rebut Mr. Harris's conclusion.

Over approximately 4½ years, there were some 225 transactions in the "safe-keeping" account. The "safe-keeping account" was opened in the name of B.J. Gurley. As securities matured, the proceeds were deposited to the "sweep account." Later, funds would be transferred from the "sweep account" to the "safe-keeping" account to purchase additional securities. On November 2, 1995, Treasury bills in the amount of $7,676,642 were delivered to Mrs. Gurley from the "safe-keeping" account. In December 1995 the remaining small cash balance in the "safe-keeping" account was deposited to the "sweep account" and the "safe-keeping" account was closed.

Throughout this period of time including the day her petition was filed, Mrs. Gurley maintained the "sweep account" at Union Planters Bank. Mr. Ed Tillman, credit man-

ager for Trinity Transportation Company, a corporation owned by the Debtor, and personal financial advisor to Mrs. Gurley, testified on behalf of Mrs. Gurley concerning the use of the "sweep account." The "sweep account" was not technically a sweep account as understood in the banking industry, but was an account used for the deposit of the proceeds from various investments, including various investment accounts and Moltan. Funds in the "sweep account" were invested overnight. Disbursements were made as needed to the various companies and investment accounts owned by Mrs. Gurley. For 1996 and 1997, the top three sources of deposit to the "sweep account" were the NBC investment account, Moltan, and Mrs. Gurley's personal account. The top three disbursements for 1997 were to the NBC investment account, Moltan, and Mrs. Gurley's personal account. Mr. Tillman testified that it would be very difficult to determine the source for the purchase of any particular investment. In fact, he said that would be "like mixing Coke, Pepsi, and Dr. Pepper in a cup and asking what part of it is Coke." Mr. Harris agreed that the "sweep account" was used for the deposit of the proceeds of the investments in the "safe-keeping" account, but testified that the "safe-keeping" account was routinely replenished when the Debtor decided to purchase new securities.

Mr. Harris did not perform an analysis of the "sweep account" for 1996 or 1997, and Mr. Harris did not know the source or sources of the four Union Planters Bank certificates of deposit or the six NBC investment accounts that appear on the Debtor's Schedule B. In Mr. Harris's opinion, however, there was no other source for the purchase of the certificates of deposit and securities that appear on the Debtor's Schedule B than the Treasury securities delivered to Mrs. Gurley in November of 1995.

■ The priority afforded to a constructive trust or equitable lien in a bankruptcy context is justified only if the claimant can specifically identify the trust fund property in its original or substituted form. *See First Federal of Michigan v. Barrow*, 878 F.2d 912, 915 (6th Cir.1989); 5 A. SCOTT § 521; Sherwin, *supra*, at 308. Otherwise the claim-

ant becomes merely a general creditor of the estate. *Barrow*, 878 F.2d at 915 (quoting 4 COLLIER ON BANKRUPTCY ¶ 541.13 at 541.78— 541.79 (15th ed.1988)). The Amended Judgment made no attempt to trace Coastal Unilube proceeds to assets of Mrs. Gurley even though Mr. Harris was a witness in that proceeding. The Trustee now bears the burden of tracing the transferred funds to Mrs. Gurley's commingled accounts. *Barrow*, 878 F.2d at 915. The Trustee urges the Court to apply the lowest intermediate balance principle to trace the proceeds of the GRC sale to the Union Planters Bank certificates of deposit and NBC securities. The Trustee asserts that the Court must assume that all expenditures from the commingled assets were made first from Mrs. Gurley's funds.

■ The Trustee's argument must fail. The authorities cited by the Trustee agree that if an account is at any time fully depleted, the trust fund is dissipated, and cannot be treated as reappearing in subsequent deposits. *Schuyler v. Littlefield*, 232 U.S. 707, 710, 34 S.Ct. 466, 466–67, 58 L.Ed. 806 (1914); *Barrow*, 878 F.2d at 916 (quoting 4 COLLIER ON BANKRUPTCY ¶ 541.13, at 541– 79—541–80 (15th ed.1988)); *United States v. Daniel (In re R & T Roofing Structures & Commercial Framing, Inc.)*, 887 F.2d 981, 987 (9th Cir.1989). The testimony of Mr. Harris was clear that the "safe-keeping" account was closed in December of 1995 after all securities had been delivered to Mrs. Gurley. There now appear six NBC investment accounts on Mrs. Gurley's Schedule B and four Union Planters Bank certificates of deposit. Mr. Harris admits that his analysis of Mrs. Gurley's assets stopped with the transactions of 1995 in which the "safe-keeping" account was wholly depleted and closed. The Trustee can point to no case in which the lowest intermediate balance assumption is applied across multiple accounts. While the Trustee perhaps could have traced the securities delivered to Mrs. Gurley in 1995 to their present form, he failed to do so. The Trustee has failed to establish that the Union Planters Bank certificates of deposit and NBC accounts currently held by the Debtor are proceeds of the sale of Coastal Unilube.

The Trustee's equitable lien will not extend to these assets.

## C. Trustee's Motion for Relief from the Automatic Stay

■ The Trustee seeks relief from the automatic stay for the following purposes:

(1) To recover possession of the assets of W.M. Gurley that still remain in the possession of the Debtor;

(2) If any further litigation is necessary to determine the rights of the parties in the assets of W.M. Gurley's estate as found by the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, to commence that litigation before the Orlando bankruptcy court;

(3) Realize and collect upon the judgment entered by the Orlando bankruptcy court;

(4) To the extent necessary, permit the Trustee to proceed in the Orlando bankruptcy court to obtain a money judgment; and

(5) File such other motions as may be necessary or appropriate in the Orlando bankruptcy court to compel the Debtor, Betty Jean Gurley, to comply with the lawful orders entered by that court.

The Trustee asserts that relief from the automatic stay should be granted for cause on the basis that the Debtor's petition was not filed in good faith. The Trustee asserts that the Debtor is engaged in a two-party dispute with the Trustee and sought the protection of this Court solely to prevent the Trustee from recovering the assets of the W.M. Gurley estate. Further, the Trustee asserts that the Debtor is using the automatic stay as a substitute for the posting of a supersedeas bond in connection with her appeals from the Amended Judgment and Amended Permanent Injunction.

■ The Court of Appeals for the Sixth Circuit has held that courts should take into account the totality of circumstances confronting a debtor, not simply her pre-plan conduct, when deciding whether or not the debtor acted in good faith in filing her petition. *Metro Employees Credit Union v. Okoreeh–Baah (In re Okoreeh–Baah),* 836 F.2d 1030, 1033 (6th Cir.1988). Indeed, the *Okoreeh–Baah* court noted that "[g]ood faith is an amorphous notion, largely defined by factual inquiry ... [and] the infinite variety of factors facing any particular debtor must be weighed carefully." *Id.* at 1033–34. Thus, this Court must, in its discretion, analyze this Debtor's good faith, or lack thereof, by reviewing all of the relevant facts and circumstances surrounding the filing of her petition. *See id.* at 1033; *Laguna Assocs. Ltd. Partnership v. Aetna Casualty & Surety Co. (In re Laguna Assocs. Ltd. Partnership),* 30 F.3d 734, 738 (6th Cir.1994). While the Sixth Circuit has set out certain factors [13] to consider when deciding whether a debtor has filed her petition in bad faith, the court has noted that "no list is exhaustive of all the conceivable factors which could be relevant when analyzing a particular debtor's good faith." *Laguna Assocs.,* 30 F.3d at 738.

In setting forth his argument that the Debtor filed her petition in bad faith, the Trustee relies heavily on the analysis used in *Matter of Grieshop,* a decision by the District Court for the Northern District of Indiana. The *Grieshop* court also listed factors [14] that

---

**13.** The factors enumerated by the Sixth Circuit are:

1. The debtor has one asset;
2. The pre-petition conduct of the debtor has been improper;
3. There are only a few unsecured creditors;
4. The debtor's property has been unsuccessful in defending against the foreclosure in state court;
5. The debtor and one creditor have proceeded to a standstill in state court litigation, and the debtor has lost or has been required to post a bond which it cannot afford;

6. The filing of the petition effectively allows the debtor to evade court orders;
7. The debtor has no ongoing business or employees; and
8. The lack of possibility of reorganization. *Laguna Assocs.,* 30 F.3d at 738.

**14.** The court enumerated the following factors:
1. The debtor has few or no unsecured creditors.
2. There has been a previous bankruptcy petition by the debtor or a related entity.
3. The pre-petition conduct of the debtor has been improper.

a court may consider when determining whether a debtor filed her bankruptcy petition in bad faith. 63 B.R. 657, 663 (N.D.Ind. 1986). In *Grieshop,* the debtor filed a chapter 11 petition after her husband's chapter 13 case failed to protect the couple's farm, which they owned as tenants by the entireties. The district court found that the standard for good faith applied by the bankruptcy court was "unduly narrow" because the bankruptcy court did not find that the debtor's actions constituted malfeasance. *Id.* Rather, the district court applied a broader standard, concluding that bad faith is not necessarily malfeasance and abuse, but may be a misuse of "bankruptcy procedure to the extent that the legitimate ends of bankruptcy law are frustrated by the debtor's actions." *Id.* at 663. The *Grieshop* court found it appropriate to consider the timing and circumstances surrounding the filing of both the husband's and wife's bankruptcy petitions. After reviewing these circumstances, the district court concluded that the clear effect was to delay foreclosure on the real estate for reasons that were not likely to further bankruptcy policy. *Id.* This Court is not bound by the *Grieshop* decision and will use the non-exhaustive factors enumerated by the Sixth Circuit to determine whether the Debtor's petition was filed in bad faith.

First, the Debtor has more than one asset. She is engaged in businesses other than Moltan, including the Cordova Golf Club, which is the subject of substantial litigation. The Debtor has other significant assets which were not the subject of the Amended Judgment.

Second, this Court does not find that the pre-petition conduct of the debtor was improper. The Trustee contends in these proceedings that the Debtor was an active participant in the fraud perpetuated by Mr. Gurley. In the prior proceedings before Judge Briskman, however, the Trustee apparently took the position that Mrs. Gurley was unaware of the import of the transfers to her and merely acted at the direction of Mr. Gurley. *See* Memorandum Opinion pp. 4–5, 11–12. The Debtor testified in these proceedings that she believed the transfers from Mr. Gurley to her were for estate planning purposes and that Mr. Gurley had been seriously ill just prior to the transfers. While there may not be any readily apparent estate planning purpose for these transfers, the Trustee failed to prove that the Debtor understood that such a purpose was lacking. The mere fact that Mrs. Gurley was aware of the transfers to her does not mean that she knowingly participated in the fraudulent activities of Mr. Gurley.

Third, the Debtor correctly points out that as the result of the entry of the Amended Permanent Injunction, she had no liquid assets available to her to post any bond that might have been required to stay the enforcement of the Amended Judgment. The Court does not believe that Mrs. Gurley should be forced to forego all possibility of appeal and reorganization because she could not post a supersedeas bond as the result of the prior injunction.

Fourth, the Court does not find that the filing of the petition will permit the Debtor to evade court orders. The Debtor will be required to propose a plan that provides for treatment of the claims of the Trustee. These claims may be modified on appeal, but the Debtor will not be able to evade the Amended Judgment.

Fifth, the Court is not yet convinced that there is no possibility of reorganization for the Debtor. The Court is aware that the

---

4. The petition effectively allows the debtor to evade court orders.
5. There a few debts to non-moving creditors.
6. The petition was filed on the eve of foreclosure.
7. The foreclosed property is the sole or major asset of the debtor.
8. The debtor has no ongoing business or employees.
9. There is no possibility of reorganization.
10. The debtor's income is not sufficient to operate.
11. There was no pressure from non-moving creditors.
12. Reorganization essentially involves the resolution of a two-party dispute.
13. A corporate debtor was formed and received title to its major assets immediately before the petition and
14. The debtor filed solely to create the automatic stay.

63 B.R. at 663.

Debtor has timely filed a plan and disclosure statement. The Trustee testified that he would not vote an acceptance of any plan proposed by the Debtor. The Court will consider confirmation issues when appropriate.

While the entry of the Amended Judgment was undoubtedly the primary motivation for the filing of the Debtor's petition, the Court is convinced that Mrs. Gurley has not acted in bad faith, but has a legitimate need for the protection of the bankruptcy laws. The Court will deny the Trustee's motion for relief from the automatic stay, without prejudice to the motion being renewed at a later time if it becomes apparent that the Debtor will be unable to obtain confirmation of her plan.

### D. Debtor's Motion for Damages for Violations of the Automatic Stay

The Debtor asserts that the Trustee has violated the automatic stay by seeking and obtaining the Operating Order from the Orlando bankruptcy court after the filing of the Debtor's petition; causing certified copies of the Amended Judgment to be recorded in various jurisdictions after the filing of the Debtor's petition; and causing $289,000 to be transferred to himself from the "sweep account" at Union Planters Bank. The Trustee replaced the $289,000 prior to the trial of these matters.

The Court has determined that the assets used by Moltan are property of the Debtor's estate. The Trustee's exercise of control over assets of this estate was at least a technical violation of the automatic stay. The Court believes that the Trustee should have sought an order of this Court before seeking the entry of the Operating Order, and certainly before taking steps to enforce the Amended Judgment and exercising control over an account held in the name of the Debtor. The Court does not find that the actions of the Trustee were willful, however.

Pursuant to 11 U.S.C. section 362(h), an individual injured by any willful violation of the automatic stay shall recover actual damages, including costs and attorneys' fees. In appropriate circumstances, such an individual may recover punitive damages. 11 U.S.C. § 362(h). A willful violation requires proof that the creditor demonstrated "egregious, intentional misconduct." *Kolberg v. Agricredit Acceptance Corp. (In re Kolberg),* 199 B.R. 929, 932–33 (W.D.Mich.1996); *Matter of Sielaff,* 164 B.R. 560, 573 (Bankr. W.D.Mich.1994); *see In re Zunich,* 88 B.R. 721 (Bankr.W.D.Pa.1988) (willful violation requires element of maliciousness or bad faith); *Matter of Van Riper,* 25 B.R. 972 (Bankr. W.D.Wis.1982) (notice of bankruptcy petition by itself is not a sufficient basis to award sanctions); *but see Knaus v. Concordia Lumber Co. (In re Knaus),* 889 F.2d 773 (8th Cir.1989) (creditor with knowledge of automatic stay who fails to turn over property of the estate commits a willful violation of the automatic stay).

The Court believes that the actions of the Trustee do not rise to the level of willfulness. While the Trustee certainly had knowledge of the filing of the Debtor's petition, his actions were taken based upon a legitimate dispute concerning the property of the Debtor's estate. The Court concludes that the Debtor should recover no damages for the Trustee's technical violations of the automatic stay.

### V. CONCLUSION

The Court will not abstain from hearing the adversary proceeding or abate the bankruptcy case. Each of the assets which was the subject of Judge Briskman's Amended Judgment is property of the Debtor's estate. The Trustee will be ordered to turn over to the Debtor the assets used by Moltan and accounts subject to the Amended Permanent Injunction. As adequate protection for his relinquishment of possession of these assets, the Trustee is entitled to an equitable lien which shall attach to all assets used by Moltan and all real property interests transferred by Mr. Gurley to the Debtor, but to no other assets of the estate. The value of the assets used by Moltan and other real property interests subject to the equitable lien may be determined in a separate proceeding. The balance of the Trustee's claim shall be treated as unsecured.

The Trustee's motion for relief from the automatic stay will be denied, without prejudice. The Debtor's motion for damages for willful violations of the automatic stay will also be denied.

The Court will enter appropriate orders consistent with its conclusions.

## ORDER ON DEBTOR'S COMPLAINT AND AMENDED COMPLAINT TO COMPEL TURNOVER, FOR DAMAGES FOR VIOLATION OF THE AUTOMATIC STAY AND FOR INJUNCTION PROHIBITING TRANSFER OF ASSETS HELD BY DEFENDANT

Based on the Memorandum Opinion dated May 11, 1998, the Court orders the following:

1. The Defendant, George E. Mills, Jr., Chapter 7 Trustee, is **ORDERED** to turn over all assets used by The Moltan Company (the "Moltan assets") to the Debtor. These assets include the following:

 a. All furniture, fixtures, equipment and inventory located at the plant in Middleton, Hardeman County, Tennessee;

 b. All furniture, fixtures, equipment and inventory located at the plant in Churchill County, Nevada.

 c. Funds deposited in Union Planters Bank accounts number 0000200204, 0145475, 0000951560;

 d. Funds deposited to the Union Planters Bank "sweep account," number 299–1896;

 e. Two certificates of deposit issued by Union Planters Bank pledged for the benefit of Moltan;

 f. Three certificates of deposit issued by Bank of America pledged for the benefit of Moltan;

 g. Accounts receivable of Moltan;

 h. All general intangibles used by Moltan, including all trademarks, whether registered or not, and all books and records of Moltan;

 i. The real property related to Moltan which consists of the plant sites in Hardeman County, Tennessee, more particularly described in the deed identified as Trial Exhibit P12 and the plant site in Churchill County, Nevada, more particularly described in the deeds identified as Trial Exhibit D16.

2. The Trustee is **ORDERED** to turn over to the Debtor the following real property:

 a. The survivorship interest of William Martin Gurley a/k/a W.M. Gurley in the real property located in Hardeman and Shelby Counties, Tennessee, as described in P.Ex. # 57–83 of Judge Briskman's Amended Judgment and included in Trial Exhibits P2–3, 7–11, 13–15, 17–20, and 40; and

 b. Nevada real property located in Mount Diablo Meridian, Nevada, Township 23 N., Range 27 E., sections 28, 32 (lots 8, 11, 12), and 33 as more specifically described in Trial Exhibit P22.

 c. The condominium located in Lake County, Florida.

3. The Trustee is **ORDERED** to turn over all accounts subject to Judge Briskman's Amended Permanent Injunction, including without limitation the following:

| | | |
|---|---|---:|
| a. | Union Planters Bank, Memphis TN # 573–9071 (B.J. Gurley personal account) | $ 49,000.00 |
| b. | Union Planters Bank, Memphis, TN # 2390416593 (C.D.) | $ 501,717.11 |
| c. | Union Planters Bank, Memphis, TN # 2390416594 (C.D.) | $ 160,998.42 |
| d. | Union Planters Bank, Memphis, TN # 0420392530 (C.D.) | $ 40,500.00 |
| e. | Union Planters Bank, Memphis, TN | $ 27,400.00 |

# 0420392529 (C.D.)

| | | |
|---|---|---|
| f. | Hardeman County Bank # 401684 | $ 1,000.00 |
| g. | National Bank of Commerce # 912827Y30 (Treasury Notes) | $ 479,242.48 |
| h. | National Bank of Commerce # 31282RF58 (Federal Home Loan Mortgage Corp.) | $ 365,739.56 |
| i. | National Bank of Commerce # 313389H35 (Federal Home Loan Bank) | $ 232,025.14 |
| j. | National Bank of Commerce # 9128272R2 (Treasury Notes) | $ 481,650.00 |
| k. | National Bank of Commerce # 313393E71 (Federal Home Loan Bank) | $ 1,004,229.72 |
| l. | National Bank of Commerce # 9128272K7 (Treasury Notes) | $ 999,412.30 |
| m. | SunTrust Bank of Central Florida, N.A. Leesburg, FL # 0133046716857 | $ 4,000.00 |

4. As adequate protection for the Trustee's relinquishment of possession of these assets, the Court impresses an equitable lien on the Moltan assets and real property described in Paragraph 2 above in favor of the Trustee.

5. The Debtor's Motion for Damages for Violation of the Automatic Stay is **DENIED**.

IT IS SO ORDERED.

## AMENDED ORDER ON TRUSTEE'S MOTION FOR REHEARING

June 15, 1998

Before the Court is the "Motion for Rehearing or, in the Alternative, Clarification" filed on May 20, 1998,[1] by George E. Mills, Jr., Chapter 7 Trustee for the Bankruptcy Estate of W.M. Gurley ("the Trustee"). The Trustee asks the Court to consider whether the decision of *In re McCafferty*, 96 F.3d 192 (6th Cir.1996) would change the Court's memorandum opinion and various orders dated May 11, 1998, addressing the turnover of certain property and refusing to abstain or abate the turnover action.

Neither the Trustee nor the Debtor brought the *McCafferty* decision to the atten-

tion of the Court in the various briefs filed in connection with the Debtor's complaint to compel turnover and the Trustee's motion for relief from the automatic stay. Unfortunately, the Court's research did not reveal the existence of the *McCafferty* decision either. The Court has now carefully reviewed *McCafferty* and concludes that it does not alter the Court's prior rulings.

The issue in *McCafferty* was "whether a portion of a husband's state government pension awarded to his former wife in a divorce decree is a dischargeable debt in the husband's subsequent bankruptcy proceeding." *Id.* at 193. The former wife contended that by virtue of the divorce decree, "her share of the pension benefits was her sole and separate property held in constructive trust by her former husband and could not be considered property of McCafferty's bankruptcy estate." *Id.* at 194. The bankruptcy court held that the obligation was dischargeable, the district court affirmed, but the court of appeals reversed and remanded. The decision of the court of appeals discusses and construes the court's prior decision, *In re Omegas Group, Inc.*, 16 F.3d 1443 (6th Cir. 1994),[2] which was relied upon by this Court

1. In response to the Trustee's motion of May 20, 1998, the Court entered an Amended Order on Debtor's Complaint and Amended Complaint to Compel Turnover, for Damages for Violation of the Automatic Stay and for Injunction Prohibiting Transfer of Assets Held by Defendant on May 27, 1998, in order to correct a clerical error in the original order. To preserve his rights, the Trustee subsequently filed a second "Motion for

Rehearing" on June 8, 1998, which incorporates by reference all issues raised in his original motion for rehearing. By this order, the Court denies *both* motions for rehearing, except as specifically set forth herein.

2. *Omegas Group* was heard by a panel of Circuit Judges Guy, Batchelder, and Senior District Judge Miller. The opinion was written by Cir-

in determining that the Trustee should be compelled to turnover the assets of Moltan to the debtor in possession, but subject to an equitable lien in favor of the Trustee.

In *McCafferty,* the Sixth Circuit states that:

> *Omegas Group* would allow "property already impressed with a constructive trust by a court in a separate proceeding prepetition ..." to be excluded from a bankrupt's estate. *Omegas Group,* 16 F.3d at 1451.

*McCafferty,* 96 F.3d at 197. Unfortunately, the language quoted from *Omegas Group* in *McCafferty* stops before the language relied upon by this Court in its memorandum opinion. The full quotation from *Omegas Group* is:

> We do not address here property already impressed with a constructive trust by a court in a separate proceeding prepetition, in which case the claimant would be entitled to priority (although not superpriority to the trustee) as a secured creditor by virtue of the judgment.

*Omegas Group,* 16 F.3d at 1451.

In another portion of the *Omegas Group* opinion, the court states:

> Nowhere in the Bankruptcy Code does it say, "property held by the debtor subject to a constructive trust is excluded from the debtor's estate."

*Id.* at 1448.

Faced with the apparent contradiction in two decisions of the Sixth Circuit, the Court looks to the underlying rationale of *McCafferty* and *Omegas Group* and finds that in *McCafferty* certain policy considerations were not present which were implicated in both *Omegas Group* and this Court's prior decision in Gurley. Specifically the property in dispute in *McCafferty* was not subject to distribution among the debtor's other creditors. Indeed, the court discusses this distinction between *McCafferty* and *Omegas Group* at length:

> Despite Mr. McCafferty's arguments, we do not believe that his former wife was in the same position as the creditor in *Omegas Group* who argued for a constructive trust. *Omegas Group* arose out of a situation in which a claim based on state property law could not be reconciled with a major goal of federal bankruptcy law— ratable distribution among creditors. See *Id.* at 1450–51 (citation omitted) (recognizing that "state law must be applied in a manner consistent with federal bankruptcy law"); see *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979) (stating that property interests in a bankruptcy proceeding should be analyzed under state law unless federal law would require a different result). When such a conflict occurs, bankruptcy policy prevails. The Supreme Court has noted, however, that the policy of ratable distribution would not be relevant where the property at issue was not subject to distribution to creditors.

*McCafferty,* 96 F.3d at 196.

The Gurley case not only implicates the bankruptcy goal of ratable distribution among creditors, but also, as discussed in the Court's prior memorandum, the strong bankruptcy policy favoring reorganization rather than liquidation. The Court's decision furthers this goal by directing the Trustee to turnover the Moltan assets while at the same time preserving the equitable interest recognized by Judge Briskman in favor of the Trustee by impressing those assets with an equitable lien.

The Trustee also asks the Court to consider the decision of *In re Mark Benskin & Co., Inc.,* 59 F.3d 170 (6th Cir.1995). The *Benskin* decision is an unpublished decision of the Sixth Circuit. Sixth Circuit Rule 24(c) states that citation of unpublished disposition is "disfavored, except for establishing res judicata, estoppel or the law of the case." Unpublished dispositions generally have no precedential effect unless there is no published opinion that would serve as well. *Id.; see United States v. Williams,* 15 F.3d 1356, 1362 n. 6 (6th Cir.1994) (en banc); *Silverburg v. Evitts,* 993 F.2d 124, 127 (6th Cir.1993); *Ewing v. McMackin,* 799 F.2d 1143, 1151 n. 14 (6th Cir.1986).

cuit Judge Batchelder. The *McCafferty* case was heard by a panel of Circuit Judges Lively, Kennedy, and Siler. The decision was written by Circuit Judge Lively.

The Trustee asks the Court to reconsider whether Judge Briskman intended to order the conveyance of the Moltan assets in entering his Amended Judgment and Memorandum Opinion. In support of his position that Judge Briskman did intend to convey the Moltan assets to the Trustee, the Trustee points to Judge Briskman's entry of orders permitting the Trustee to operate the business. The Trustee argues that Judge Briskman would not have permitted the Trustee to operate the business unless the property belonged to the debtor. In its prior memorandum, the Court noted the alternative theories concerning Moltan in Judge Briskman's Memorandum Opinion, and the Court recognizes that Judge Briskman found under one theory that the Moltan assets were never transferred to Mrs. Gurley. The fact remains, however, that record title to a number of significant assets used by Moltan were transferred. Neither the Memorandum Opinion nor the Amended Judgment ever divests title to these assets from Mrs. Gurley. Thus for the reasons previously stated, the Court remains convinced that conveyance of the Moltan assets to the Trustee was not completed before Mrs. Gurley's petition was filed.

The Trustee requests clarification concerning three trademarks, Sani–Cat Plus, Thrifty–Sorb, and Opti–Sorb, registered solely in the name of W.M. Gurley. The Trustee is correct that the estate of Mrs. Gurley has no claim to assets which are registered solely in the name of Mr. Gurley. These three trademarks are not property of this estate and are excepted from the Court's order directing the Trustee to turnover the assets of Moltan.

The Trustee has asked the Court to clarify whether motor vehicles used in the operation of Moltan and office furniture, fixtures and equipment located at Moltan headquarters were intended to be included in those assets to be turned over to the Debtor. It was the Court's intent that all motor vehicles used and useful in the operation of Moltan and all office furniture, fixtures and equipment located at Moltan headquarters be turned over.

The balance of the Trustee's motion for rehearing raises issues concerning adequate protection and the orderly turnover of the assets of Moltan, and related issues collateral to the Court's prior orders. The Trustee has filed three motions related to cash collateral, setting operating conditions for Moltan, and adequate protection. The Court will consider the remaining issues raised by the Trustee in connection with the hearing scheduled on these motions, and in the context of other appropriate proceedings.

Accordingly, **IT IS ORDERED** that the Motion for Rehearing or, in the Alternative, Clarification, is **DENIED**, except that the Trustee is not directed to turnover the three trademarks held solely in the name of W.M. Gurley, but the Trustee is directed to turnover all motor vehicles used and useful in the operation of Moltan and all office furniture, fixtures and equipment located at Moltan headquarters.