**In re Betty Jean GURLEY, Debtor.**

**Bankruptcy No. 97–35255–L.**

United States Bankruptcy Court,
W.D. Tennessee,
Western Division.

June 30, 1999.

John R. Dunlap, James E. Bailey, III, Memphis, Tennessee, for debtor.

Sean M. Haynes, Memphis, Tennessee, for United States Trustee.

James E. Foster, Orlando, Florida, for George E. Mills, Jr.

## MEMORANDUM

JENNIE D. LATTA, Bankruptcy Judge.

Before the Court is the Second Amended Request for Payment of Administrative Claim (*See* Document No. 552) filed February 19, 1999, on behalf of creditor George E. Mills, Jr., Trustee. The Trustee seeks reimbursement of certain fees and expenses incurred by himself and his attorney, James E. Foster, pursuant to 11 U.S.C. § 503. The Trustee asserts that he and his counsel made a substantial contribution to the bankruptcy case of the Debtor, Betty Jean Gurley, and thus that he is entitled to reimbursement as an administrative expense. Both the Debtor and the United States Trustee have filed objections to the Trustee's request. The issues presented by the Trustee's request are (1) whether a subsequent amendment to the Trustee's original timely-filed request may relate back to the original request; (2) whether the Trustee may recover expert

witness fees incurred in connection with a disputed valuation hearing in which the Trustee asserts he was the "substantially prevailing party"; (3) whether the Trustee's request for reimbursement of attorney fees and expenses pursuant to 11 U.S.C. § 503(b)(4) must fail because the Trustee did not timely file a request pursuant to 11 U.S.C. § 503(b)(3); (4) whether the Trustee may recover reasonable compensation for services rendered by his attorney under 11 U.S.C. § 503(b)(4) if he has no expenses other than attorney fees to recover pursuant to 11 U.S.C. § 503(b)(3); and (5) if so, whether the Trustee made a "substantial contribution" in the Debtor's case. For the reasons set forth below, the Trustee's request will be granted in part and denied in part.

## I.

George E. Mills, Jr. is the Chapter 7 trustee for the estate of William M. Gurley, the Debtor's husband, whose Chapter 7 bankruptcy case is pending in the United States Bankruptcy Court for the Middle District of Florida. The Trustee is the largest creditor in this bankruptcy case, holding a secured claim in the amount of $10,983,667.00, and an unsecured claim in the amount of $11,070,289.00. In his Second Amended Request for Payment of Administrative Expense Claim, the Trustee seeks reimbursement of the following fees and expenses as administrative expenses of this estate:

(1) Expert witness fees in the amount of $21,411.22 for the services of Dr. Douglas Southard, and $20,581.49 for the services of Mr. Robert Harris, CPA. These experts were employed by the Trustee in connection with a dispute with the Debtor concerning the value of assets used in connection with a business known as The Moltan Company ("Moltan"). In the course of this bankruptcy case, the Court determined that the business is a sole proprietorship owned by the Debtor, but that the assets of the business were subject to an equitable lien in favor of the Trustee.[1] Pursuant to the Debtor's confirmed plan, the Trustee's claim secured by the equitable lien was paid in full.

(2) Trustee's fees and expenses in connection with the operation of Moltan in the amounts of $75,000.00 in fees and $15,114.33 in travel expenses. The Trustee asserts that he expended over 1,000 hours in the operation and management of Moltan. Although he has been compensated for his time by the William M. Gurley bankruptcy estate, the Trustee asserts that the William M. Gurley estate is entitled to be reimbursed by the Debtor's estate. The Trustee asserts that he made a substantial contribution to the Debtor's case because he surrendered Moltan back to the Debtor "in excellent financial condition with approximately $700,000 in cash on hand."

(3) Attorney fees and costs. The Trustee asserts that the gross amount of fees and expenses incurred by the Trustee in connection with Mrs. Gurley's bankruptcy case, but excluding an adversary proceeding for turnover and a motion for change of venue, was $300,052.50 in fees and $75,288.53 in expenses. In his original and amended requests for payment of administrative expenses, the Trustee asserted that he should be permitted to recover one-third of those amounts, or $112,602.31, as an administrative expense of this estate. In his Second Amended Request, the Trustee has specifically identified certain activities among all those undertaken by his counsel that he asserts substantially benefitted the Debtor's estate. The detail attached as Exhibit 5 to the Trustee's Second Amended Request for Payment of Administrative Expense Claim reveals that the Trustee seeks reimbursement for $836.50 in attorney fees incurred in connection with an objection to the fee application of the Debtor's counsel; $237.50 in attorney fees incurred in connection with obtaining the return to the estate of the so-called ZIX

---

1. *See Gurley v. Mills (In re Gurley),* 222 B.R. 124 (Bankr.W.D.Tenn.1998).

mining claims; $3,941.50 in attorney fees incurred in connection with an objection to the Debtor's request for an extension of the exclusivity period; $11,671.50 in attorney fees for activities described as "General Administrative"; $1,472.00 for attorney fees related to a dispute concerning certain trademarks used in the business of Moltan; $23,685.00 in attorney fees incurred in connection with the Trustee's proposal of a competing plan and ultimately in negotiating a consensual plan with the Debtor; and $14,153.86 in attorney fees and expenses incurred post-confirmation in connection with claims of certain Moltan management employees to severance pay. The Trustee claims an additional $15,855.65 in expenses not identified to any particular matter. The total amount of fees and expenses set forth in the detail is $71,855.65.

## II.

■ The Trustee relies upon two subsections of 11 U.S.C. § 503 in support of his application. Section 503(b)(3)(D) provides for allowance of administrative expenses including "the actual, necessary expenses ... incurred by ... a creditor ... in making a substantial contribution in a case under chapter ... 11...." 11 U.S.C. § 503(b)(3)(D). Section 503(b)(4) provides for allowance as an administrative expense of:

> reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under paragraph (3) of this subsection based upon the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant.

11 U.S.C. § 503(b)(4). Because the Bankruptcy Code generally provides a scheme of ratable distribution among similarly situated creditors, the provisions for priority treatment of certain claims and expenses

are construed strictly against the claimant. *See Woburn Assocs. v. Kahn (In re Hemingway Transport, Inc.)*, 954 F.2d 1 (1st Cir.1992); *In re Sunarhauserman, Inc.*, 184 B.R. 279, 282 (Bankr.N.D.Ohio 1995). The claimant to an administrative expense priority bears the burden of proving his entitlement to such treatment by a preponderance of the evidence. *See Woburn Assocs.* 954 F.2d at 5; *see also United Trucking Serv., Inc. v. Trailer Rental Co., Inc. (In re United Trucking Serv., Inc.)*, 851 F.2d 159, 162 (6th Cir.1988). If allowed as an administrative expense, a claim is entitled to first priority of distribution among unsecured claims against the bankruptcy estate. *See* 11 U.S.C. § 507(a)(1).

### A.

■ The Debtor's confirmed plan set a deadline for filing requests for payment of administrative expenses sixty days after the entry of the order confirming the plan. (*See* Document No. 408). That order was entered on September 21, 1998; thus, the deadline for filing requests for payment of administrative expenses was November 20, 1998. Although the Trustee initially filed his Request for Payment of Administrative Claim on November 19, 1998, it was not until he filed his Second Amended Request for Payment of Administrative Claim on February 19, 1999, that the Trustee made any claim for compensation of his own time and reimbursement of his expenses. The original request related only to attorney fees and expenses and expert witness fees and expenses incurred by the Trustee. The Debtor objects that the request for reimbursement of the Trustee fees and expenses is too late.

Pursuant to 11 U.S.C. § 503(a), "[a]n entity may timely file a request for payment of an administrative expense, or may tardily file such request if permitted by the court for cause." The Bankruptcy Code specifies no time for the filing of requests for reimbursement of administrative expenses, thus it is left to the discretion of the bankruptcy judge to set a dead-

line for filing such requests. In this case, the deadline was set in the order confirming the Debtor's plan. The Code does not specify what "cause" could be shown that would permit a tardily filed request for payment of an administrative expense. Federal Rule of Bankruptcy Procedure 9006(b) permits the court to enlarge the time for taking some action specified in an order of the court upon motion made after the expiration of the specified period "where the failure to act was the result of excusable neglect."

The Trustee has not asserted any cause for the late-filing of his request for reimbursement of his own fees and expenses. The fact that the Trustee received notice of the filing deadline is evidenced by the timely filing of his original request, one day before the filing deadline. The Trustee has not asserted that his failure to timely file his request was the result of excusable neglect. The Court concludes that the Trustee's request for reimbursement of his own fees and expenses cannot be allowed unless the Trustee's amendment can relate back to the original filing on November 19, 1998.

▬▬ An amendment to a timely-filed proof of claim will be permitted to relate back to the original filing in order to "cure a defect in the claim as originally filed, to describe the claim with greater particularity or to plead a new theory of recovery on the facts set forth in the original claim." *In re Kolstad*, 928 F.2d 171, 175 (5th Cir.), *cert. denied*, 502 U.S. 958, 112 S.Ct. 419, 116 L.Ed.2d 439 (1991) (quoting *In re International Horizons, Inc.*, 751 F.2d 1213, 1216 (11th Cir.1985)). An amendment that sets forth a wholly new ground of liability, however, should not be permitted to relate back to the original filing. *See Kolstad*, 928 F.2d at 175. For example, the Internal Revenue Service as a creditor was not permitted to "amend" a timely filed proof of claim by adding claims for tax years not asserted in its original proof of claim. *In*

*re Chavis*, 160 B.R. 804 (Bankr.S.D.Ohio 1993), *aff'd, United States v. Chavis (In re Chavis)*, 47 F.3d 818, 819 (6th Cir.1995). *See also, In re Rains*, 139 B.R. 158 (Bankr. D.Md.1992) (for late claim to be considered amendment of timely filed claim, rather than new claim, second claim should be of same nature as first and reasonably within amount to which first claim provided notice); *United States v. Baker (In re Baker)*, 129 B.R. 607 (E.D.Mo.1991) (late filed claim did not relate back to original proof of claim, where supplemental claim was entirely separate and distinct claim); *In re Kulick*, 85 B.R. 680 (E.D.N.Y.1988) (late-filed claims did not provide notice of transaction forming basis of claim and could not be characterized as an amendment to the timely claims); *In re Friesenhahn*, 169 B.R. 615 (Bankr.W.D.Tex.1994) (untimely claim was insufficiently related to prior, timely claim to be considered an amendment and thus would not relate back). The Court believes that the same analysis should be applied to late-filed requests for payment of administrative expenses as is applied to late-filed proofs of claim.

The request for compensation of the Trustee's services and reimbursement of his expenses is wholly separate and apart from the Trustee's requests for reimbursement of expert witness fees and attorney fees and expenses. This portion of the purported amendment is in fact a new claim, which was not timely filed, and does not relate back to the originally filed request. Because the request was not timely filed and because the Trustee has failed to plead or prove excusable neglect for his tardiness, the Trustee's request for reimbursement of $75,000.00 plus $15,114.33 in expenses will be disallowed as an administrative expense of this estate.

▬▬ The Debtor also objects that section 503(b)(3) limits the Trustee to possible recovery of his expenses, but makes no provision for compensation of services performed by a creditor.[2] The Debtor is cor-

---

2. Similarly, the Bankruptcy Code makes no

provision for payment of compensation for

rect, and for this additional reason, the Court will deny the Trustee's request for allowance of a $75,000.00 fee to himself as an administrative expense of this estate.

## B.

■ The Trustee asserts that he is entitled to be reimbursed the fees and expenses of two experts employed by him in connection with the trial concerning the valuation of the Trustee's secured claim. After the Court determined that the assets used in connection with Moltan and certain other disputed assets were assets of Mrs. Gurley's bankruptcy estate subject to an equitable lien in favor of the Trustee, the Debtor filed a motion requesting that the Court determine the value of the Trustee's lien. (*See* Document No. 180.). As became clear in later stages of the case, the Debtor intended to redeem these assets by paying to the Trustee the full value of his lien. The value of the Moltan assets was heavily disputed by the parties. The Court conducted a trial over a period of four days, and ultimately determined that the value of the equitable lien was $10,-938,667. (*See* "Order Resolving Motion to Determine Value of Equitable Lien Claim of George E. Mills, Jr., Chapter 7 Trustee," entered August 31, 1998, Document No. 363). The Trustee asserts that he is entitled to recover his expenses in connection with this hearing because he "was the substantially prevailing party in connection with the determination of the value of Moltan." Nowhere does the Trustee suggest the basis for this assertion, and the Court can find no basis in the Bankruptcy Code

for awarding the expenses of litigation to the substantially prevailing party in a contested valuation hearing (assuming for purposes of argument that the Trustee was in fact the substantially prevailing party). Further, the Trustee provides no basis for asserting that such fees, if awarded, should be elevated to first priority for distribution as an administrative expense. The Trustee's request for reimbursement of his expert witness fees will be denied.

## C.

Each of the Trustee's remaining claims for reimbursement seeks reimbursement of attorney fees and expenses incurred by the Trustee. The Debtor argues that award of an administrative expense to the Trustee under section 504(b)(3) is a prerequisite to an award of attorney fees under section 503(b)(4). The Debtor asserts that the Trustee did not timely file an application under section 503(b), but rather his attorney filed an application. The Debtor concludes that for this reason, the application, as amended, should be denied in its entirety.

■ The Court has reviewed the original application and each of the two amendments. The Debtor is mistaken with respect to the original application. The original application was filed on behalf of the Trustee and sought administrative expense status for the Trustee's expert witness fees and attorney fees and expenses. The application did erroneously rely upon section 330 [3] of the Bankruptcy Code rather than Sections 503(b)(3) and (4), but the

services rendered by a member of an official committee. *See* 11 U.S.C. § 503(b)(3)(F); H.R.Rep. 103–834, 103rd Cong., 2nd Sess. 8 (Oct. 4, 1994); 140 Cong.Rec. H10765 (Oct. 4, 1994).

**3.** Mr. Mills was, of course, the Trustee in Mr. Gurley's bankruptcy case, not Mrs. Gurley's. Section 330(a)(1) relates to the award of compensation and expenses to a trustee, examiner or professional person under section 327 or 1103. That section provides:

Except as otherwise provided in this section, the trustee, with the court's approval,

may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a). Mr. Mills no doubt relied upon this section in making an application for compensation and reimbursement of his attorney fees and expenses in Mr. Gurley's bankruptcy case.

Court does not find this error fatal to the application. The application referred to the substantial contribution standard and contained sufficient detail to put the Debtor on notice of the nature of the Trustee's claim. This objection to the timeliness of the Trustee's application is overruled.

### D.

■ The Debtor's objection appears to go beyond timeliness, however, and suggests that there must be an award of administrative expense to the Trustee *other than* attorney fees under section 503(b)(3) before the Trustee may seek recovery of his attorney fees and expenses under section 503(b)(4). In other words, the Debtor argues that the expenses awarded to the Trustee under section 503(b)(3) for making a substantial contribution in a case cannot consist of attorney fees. Because the Court has denied the Trustee's request for reimbursement of his own direct expenses and expert witness fees, the Debtor argues that the Trustee has no remaining section 503(b)(3) claim and thus, is not entitled to recovery under section 503(b)(4). This issue appears to be one of first impression in this circuit.

The Court has reviewed some seventy cases involving section 503(b)(4). A number of courts have permitted the recovery of attorney fees and expenses in cases where there is no mention of claims for recovery of expenses other than attorney fees. *See, e.g., Lebron v. Mechem Fin., Inc.,* 27 F.3d 937 (3d Cir.1994); *In re Flight Transp. Corp. Sec. Litig.,* 874 F.2d 576 (8th Cir.1989); *In re Hooker Inv., Inc.,* 188 B.R. 117 (S.D.N.Y.1995); *In re Decarbo,* 152 B.R. 44 (W.D.Pa.1993); *In re Warner,* 141 B.R. 762 (M.D.Fla.1992); *In re Encapsulation Int'l, Inc.,* No. 96–31762, 1998 WL 801898, at *1 (Bankr.W.D.Tenn. Nov. 9, 1998). The language of sections 503(b)(3) and 503(b)(4) lends support to the Debtor's argument, however. Section 503(b)(3) specifically relates to "actual, necessary expenses *other than* compensation and reimbursement specified in para-

graph (4) of this subsection...." 11 U.S.C. § 503(b)(3) (emphasis supplied). Section 503(b)(4) permits "reasonable compensation for professional services rendered by an attorney ... of an entity whose expense is allowable under paragraph (3) of this subsection...." 11 U.S.C. § 503(b)(4). The Debtor's position further appears to be supported by the Fifth Circuit in *Matter of DP Partners Ltd. Partnership,* 106 F.3d 667, 674 (5th Cir.), *cert. denied, DP Partners Ltd. Partnership v. Hall Financial Group, Inc.,* — U.S. —, 118 S.Ct. 63, 139 L.Ed.2d 26 (1997). In that case, the court stated:

> A closely-related but separate provision is subsection (b)(4).... This provision is expressly dependent upon a claimant qualifying for an administrative expense award in subsections (3), which requires that expenses, other than professional fees, be reasonable and necessary.

*Id.* at 674. Although the opinion strongly suggests that an independent creditor expense is a prerequisite to obtaining reimbursement of attorney fees under section 503(b)(4), there is in fact no mention of a claim other than for attorney fees and expenses. The Fifth Circuit nevertheless remanded the case for a determination of the amount of attorney fees to be awarded.

The first reported decision to deal directly with the issue raised by the Trustee was *In re Marquam Investment Corp.,* 176 B.R. 34 (Bankr.D.Or.1994), *rev'd on other grounds,* 188 B.R. 434 (D.Or.1995). In a case converted from chapter 11 to chapter 7, an attorney who simultaneously represented a creditor and the chapter 11 trustee for certain purposes sought compensation from the estate pursuant to sections 503(b)(1), (3) and (4) and sections 327 and 330 of the Bankruptcy Code. The debtor and two others objected that "Section 503(b)(3) requires a creditor to incur an expense other than an attorney fee or expense covered under 503(b)(4) in connection with making a substantial contribution to the estate or recovering a transfer." *Id.* at 37. Because the applicant's client

had not incurred any such expense, the objectors argued that none of the attorney fees could be recovered from the estate. The court rejected this argument. The court concluded that "Section 503(b)(4)'s reference to 'an entity whose expense is allowable under paragraph (3) of this subsection' was merely intended to identify the entity in question and not to limit compensation only to those professionals who rendered services to an entity which actually incurred an expense." *Id.* The court reasoned that a literal reading of the sections would permit recovery of attorney fees and expenses where the creditor incurred only nominal expense, such as the cost of a stamp, but not if the creditor incurred no expense. Further, such a reading would permit recovery of attorney fees and expenses when a creditor paid its own litigation expenses as they were incurred, but not when its attorney advanced the costs expecting reimbursement. The court rejected such an "arbitrary and illogical reading" of the statute, and turned to a consideration of whether the creditor had made a substantial contribution to the case. *Id.*

The second reported decision to address the issue framed by the Debtor was *Law Offices of Neil Vincent Wake v. Sedona Institute (In re Sedona Institute)*, 220 B.R. 74 (9th BAP Cir.1998). The opinion of the panel was written by Bankruptcy Judge Peter W. Bowie, sitting by designation. A dissenting opinion was filed by Bankruptcy Judge Barry Russell. The majority agreed that a literal reading of sections 503(b)(3) and 503(b)(4) would lead to the absurd result highlighted in the *Marquam Investment* decision, and concluded that:

> [T]he exclusion of professional compensation from § 503(b)(3) was designed not to require that the creditor incur expense in addition to attorneys fees and costs, but rather to channel those professional's fees through the additional standards of (b)(4)—'reasonable ... based on the time, the nature, the ex-

tent, and the value of such services, and the cost of comparable services....,' there being no express 'reasonable' requirement for nonprofessional expenses incurred by a creditor under (b)(3). *Id.* at 79. Although the majority was "reluctant to stray from a strict interpretation" of the statute, it nevertheless concluded that a creditor who makes a substantial contribution in a case may recover reasonable professional fees and expenses under section 503(b)(4) regardless of whether it has an independent allowable expense under section 503(b)(3). *Id.* at 81.

In his dissent, Judge Russell argued that section 503(b)(4), read literally, would not permit a creditor to recover attorney fees and expenses unless that creditor had an independent expense allowable under section 503(b)(3), and that there was no reason not to read the statute as written. Judge Russell reasoned that this requirement is consistent with Congressional intent to limit administrative expenses. Further, he noted that the problem of a creditor incurring merely nominal expenses raised by the *Marquam Investment* court was really no problem at all because the reasonableness of the fees awarded would bear some relationship to the expenses incurred.

Although it is a close question, this Court agrees with the conclusion reached by the court in *Marquam Investment* and the majority in *Sedona Institute.* The ability to recover attorney fees and expenses logically depends upon whether the fees have been incurred by an entity who falls into one of the categories established in section 503(b)(3), not upon whether such entities have incurred expenses other than professional fees. Section 503(b)(4) literally requires only that the requesting entity's expense be "allowable under paragraph (3)", not that such expenses actually be allowed. The types of entities whose expenses are "allowable" under paragraph (3) are those who have, for example, made a substantial contribution in a case. It is

these types of entities whose claims for reimbursement of attorney fees and expenses may be considered under the reasonableness standard of section 503(b)(4). The Court overrules this objection to the Trustee's request and turns to a consideration of whether the Trustee made a substantial contribution in the case.

### E.

 Section 503(b) states that a creditor is entitled to "actual and necessary expenses incurred ... in making a substantial contribution in a case under chapter ... 11." The Bankruptcy Code provides no guidance for determining when a creditor has made a substantial contribution in a bankruptcy case. That determination is left to the discretion of the bankruptcy judge, who will be guided by the principle that administrative expenses "should be allowed to the extent that they redound to the benefit of the general creditors and the estate." William L. Norton, Jr., NORTON BANKRUPTCY LAW AND PRACTICE 2D, § 42.13 (1997). The Court is impressed with the discussion of the substantial contribution standard set out by Bankruptcy Judge Tina L. Brozman in *In re Best Products Co., Inc.*, and will quote extensively from that opinion:

> The substantial contribution test is intended to promote meaningful creditor participation in the reorganization process, but not to encourage mushrooming administrative expenses. Each § 503(b) applicant must prove by a preponderance of the evidence that the services rendered for which it seeks compensation provided a substantial benefit to the estate. Compensable services are those which facilitate progress in the case, rather than those which retard or interrupt. Factors which the courts have considered in determining whether an applicant has made a substantial contribution in a chapter 11 case include: whether the services were provided to benefit the estate itself or all of the parties in the bankruptcy case; whether

the services conferred a direct benefit upon the estate; and whether services were duplicative of services performed by others.

> Benefits which have been found to be insubstantial include those services which would merely deplete the assets of the estate without proving a corresponding greater benefit. "Creditors face an especially difficult burden in passing the 'substantial contribution' test since they are presumed to act primarily in their own interests." *U.S. Lines*, 103 B.R. at 430 (citing *In re Jensen–Farley Pictures, Inc.*, 47 B.R. 557, 571 (Bankr.D.Utah 1985)). Whereas services that confer a significant and demonstrable benefit upon the reorganization process which have not been rendered solely on behalf of a creditor's own interest should be compensated, extensive participation in a case, without more, is insufficient to compel compensation. And efforts undertaken by creditors solely to further their own self-interest are not compensable under section 503(b). The integrity of § 503(b) can only be maintained by strictly limiting compensation to extraordinary creditor actions which lead directly to tangible benefits to the creditors, debtor or estate. Compensation must be preserved for those rare occasions when the creditor's involvement truly fosters and enhances administration of the estate. Thus, the general rule remains that attorneys must look to their own clients for payment.

*In re Best Prods., Inc.*, 173 B.R. 862, 865–66 (Bankr.S.D.N.Y.1994) (most internal citations omitted).

 The Court will consider in turn each of the Trustee's claims that he, through his counsel, has conferred a substantial benefit in the case. First, the Trustee asserts that he, through his counsel, objected to the fee applications of the debtor's counsel resulting in changes to the application and a reduction in the fees requested. The Trustee claims this was a

benefit to the estate. The Trustee requests that he be reimbursed for attorney fees in the amount of $836.50 in connection with the objection to the fee request. The Court's file reflects that the attorneys for the debtor-in-possession filed their First Interim Application for Compensation seeking $141,894.75 in fees and $6,113.02 in expenses on February 27, 1998. Both the Trustee and the United States Trustee filed objections to the Application. The file further reflects that the parties reached a stipulation concerning certain reductions in the fees and expenses requested. Fees were allowed in the amount of $110,032.29 and expenses were allowed in the amount of $6,078.38. While there was a significant reduction in the fees requested, the Court is not able to say that this reduction resulted solely from the efforts of the Trustee. To some extent, the actions of the Trustee merely duplicated those of the United States Trustee. Indeed, the Court's impression is that the settlement reached was rather typical of the usual fee negotiation process in Chapter 11 cases in this district in which the United States Trustee vigilantly reviews all fee applications. The Court cannot find that the reduction was the result of extraordinary creditor action that should be compensated as an administrative expense.

■ Second, the Trustee claims that he, through his counsel, required the Debtor to return to the estate certain real property known as ZIX mining claims, which were transferred by the Debtor to a corporate entity in violation of an injunction entered by the Orlando bankruptcy court. The Trustee seeks reimbursement of $237.50 in attorney fees incurred in connection with the ZIX mining claims. The Court has reviewed its file concerning the ZIX mining claims. These claims were described as "33 unpatented lode claims" transferred from B.J. Gurley d/b/a/ Moltan Company to a corporation known as ZIX, Inc. All shares of the corporation were owned by the Debtor. The Trustee filed a motion to require the Debtor to

appear in the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, and show cause why she should not be held in contempt for her alleged failure to abide by that court's Permanent and Amended Permanent Injunction. In response, the Debtor filed a motion in this district to require the Trustee to appear and show cause why he should not be held in contempt for willful violation of the automatic stay as a result of his filing the civil contempt motion in the Orlando court. The Debtor and the Trustee resolved the dispute between themselves with each side withdrawing its respective motion and the Debtor agreeing to reconvey the claims to herself. Although the transfer to ZIX, Inc., was not authorized by this Court, the transfer did not result in any diminution of the bankruptcy estate since the value of the claims was fully reflected in the shares of stock held by the Debtor. The ZIX mining claims were treated as property used or useful in the business of Moltan in connection with the hearing on the valuation of the Moltan enterprise. Neither party sought to separately value the mining claims. Thus the Court cannot determine whether the value of the mining claims was "substantial" in relation to the entire bankruptcy estate. Based upon the record established by the Trustee in support of his request for payment of administrative expense, the Court cannot find that the actions of the Trustee related to the mining claims made a substantial contribution to the bankruptcy case.

■ Third, the Trustee claims that he, through his counsel, successfully opposed the Debtor's motion to extend the exclusivity period for obtaining acceptances of her plan. The Trustee seeks reimbursement of $3,941.50 in attorney fees incurred in connection with his opposition to the Debtor's motion. The Trustee argues that by successfully opposing the Debtor's motion, the way was opened for him to file a competing plan. The mere fact that the exclusivity period in a case is terminated is

not in itself a substantial contribution. Rather, the termination of the exclusivity period must result in the confirmation of a plan that offers substantially better treatment to the non-moving creditors. The Trustee claims that the filing of his plan resulted in substantial improvement to the Debtor's plan that was ultimately confirmed. The Trustee has also requested reimbursement of $23,685.00 in attorney fees incurred in connection with the Trustee's proposal of a competing plan and ultimately in negotiating a consensual plan with the Debtor. The Court will consider both of these requests together as each depends upon whether the filing of the Trustee's plan was a substantial contribution to the case.

 The Court has compared the treatment proposed under the Debtor's original plan, under the Trustee's plan, and under the confirmed plan for those creditors other than the Trustee. The results of that comparison are set out below:

| | Debtor's Plan | Trustee's Plan | Confirmed Plan |
| --- | --- | --- | --- |
| Effective Date | 30 days after confirmation | 30 days after confirmation | **supply effective date** |
| Unsecured Claims ≤ $20,000 | Paid in full within thirty days after confirmation. | Paid in full on the Effective Date together with interest at the rate of 8.5% from 10–20–97. | Paid in full on or before 75 days after confirmation together with interest at the rate of 5.58% from 10–20–97. |
| Claim of Michael Williamson | Paid in full within 30 days after confirmation. | Allowed as filed less $5,000. Paid in three equal monthly installments commencing 60 days after the confirmation date. Trustee to release all claims of the Debtor against the law firm. | Allowed as scheduled. Paid in full 75 days after confirmation. Debtor to release law firm. |
| Claim of Essenjay (not yet allowed) | If unsecured claims exceed $6,000,000, Debtor to pay $500,-000 to be distributed pro rata within 90 days after the Effective Date. The balance of all unsecured claims to be repaid in 7 equal annual installments together with interest at the market rate. | Paid in full upon allowance. | Paid in full upon allowance. |
| Orlando appeal | To be pursued. | To be dismissed. | To be pursued. |

Comparison of the three plans yields mixed results. For example, the Trustee's plan is more favorable to general unsecured creditors with claims equal to or less than $20,000.00 in that it provides for payment of interest from October 20, 1997, until the claim is paid. The Debtor's original plan did not provide for the payment of interest on these claims. The confirmed plan provides for the payment of interest, but at a lower rate than that proposed by the Trustee.

The Debtor's schedules list $111,274.70 in unsecured, nonpriority claims equal to or less than $20,000.00. These claims are classified as Class 2 claims in the confirmed plan, and the Court will refer to

them as such. For purposes of this analysis, the Court will assume that all of these claims remained unpaid at confirmation. With respect to these Class 2 claims, the confirmed plan provides for the payment of interest at the rate of 5.58% from October 20, 1997, until paid. These claims are to be paid within 75 days after confirmation. The plan was confirmed on September 21, 1998. Thus the last day for paying Class 2 claims was December 5, 1998. On that date simple interest would have accrued in the amount of $6,991.11 ($111,-274.70 / 365 = $17.01 per diem; $17.01 × 411 days = $6,991.11). This is the amount of the tangible contribution that resulted from the filing of the Trustee's plan with respect to this class of creditors.

Under the confirmed plan, Class 3 consists of the claim of Michael Williamson, of the law firm of Maguire, Boorhis & Wells, P.A., the Debtor's attorney in the Orlando bankruptcy court litigation.[4] The Debtor scheduled this claim as undisputed in the amount of $80,000.00 (*See* Document No. 26). The Debtor's original plan proposed to pay the claim in full within 30 days after the effective date. The Trustee's plan would have allowed the claim as filed less $5,000.00; paid the claim in three equal monthly installments commencing 60 days after the Effective Date; and released Mr. Williams and his law firm from all claims held by the Debtor. The confirmed plan provides for allowance of the claim as scheduled; payment within 75 days after confirmation; and release of Mr. Williamson and his firm. There is nothing in the record from which the Court can determine the value of the release given to Mr. Williamson. The Debtor indicated no dispute with the amount of Mr. Williamson's fees in her bankruptcy schedules. The Debtor's original plan would have paid this claim in full within 60 days after confirmation. The confirmed plan provides for payment of the claim in full within 75 days

after confirmation. The Trustee's plan would have reduced the amount of Mr. Williamson's claim by $5,000.00 and prolonged the period for repayment. The Court cannot find that the proposal of the Trustee's plan resulted in a tangible contribution to the case with respect to Mr. Williamson's claim.

Essenjay & Associates filed a proof of claim in the amount of $2,000,000.00. According to Mr. George McCrary, an attorney for the Debtor, this represents a counterclaim filed in response to the Debtor's complaint against Essenjay & Associates pending in the Chancery Court of Shelby County, Tennessee. Mr. McCrary's opinion was that the litigation should result in a net recovery to the Debtor. The Debtor employed Mr. McCrary as special counsel to pursue this litigation in the Chancery Court (*See* Document No. 54). The treatment provided to Essenjay under both the Trustee's plan and the confirmed plan is more favorable than that proposed under the Debtor's plan, but the Court cannot determine that the activities of the Trustee resulted in a tangible benefit to the creditor because the claim has not yet been allowed. If Mr. McCrary is correct, there will be no allowed claim and no distribution. The Court concludes that the change in the treatment of the Essenjay claim was not a substantial contribution to the case.

Both the Debtor's original plan and the confirmed plan propose that the Debtor's appeal of the judgment obtained by the Trustee in the Orlando bankruptcy court be pursued. The Trustee's plan proposed that the appeal be dismissed with prejudice. The Debtor asserts that the appeal may result in a recovery by her of several million dollars. The Court cannot determine the value, if any, of the appeal to the estate. It is clear, however, that all value would have been lost if the Trustee's proposal had prevailed. This would have provided a significant benefit to the Trustee,

---

4. See *Gurley v. Mills*, 222 B.R. at 129, for a description of the Orlando bankruptcy court litigation.

but no benefit to the general creditors of this estate. The Court concludes that the Trustee's efforts with respect to this portion of the plan resulted in no tangible benefit to the estate.

In addition to the above, the Trustee proposes that his efforts resulted in more beneficial timing of payments under the confirmed plan and more beneficial treatment of his secured and unsecured claims. The benefits of each of these changes redound to the Trustee rather than the general unsecured creditors. It is not appropriate for the Trustee to seek to charge the estate for efforts undertaken exclusively for his own benefit.

 It is true that the cooperation of the Trustee resulted in the eventual consensual confirmation of the Debtor's Third Amended Plan of Reorganization. Based upon its own knowledge of the hearings and pleadings in this case, and the Court's review of the itemization of fees submitted by Mr. Foster, the Court believes that a significant change occurred in the attitude and efforts of the Trustee and his counsel beginning on September 9, 1998. On that day, the Court conducted an in-chambers conference with counsel for the Debtor and the Trustee that resulted in negotiation of the consensual plan of reorganization which was ultimately confirmed. Mr. Foster's time records from that point forward reflect cooperative efforts with Debtor's counsel and substantial work on drafting and revising the Third Amended Plan of Reorganization. The Court finds that these efforts made a substantial contribution to the case. Had the parties not reached this consensual resolution, the estate would have incurred substantial additional litigation expenses. The itemized fees for the Trustee's counsel, excluding travel time between Memphis and Orlando, are $7,025.00. This amount is substantially equal to the tangible benefit that accrued to the general unsecured creditors as the result of the filing of the Trustee's competing plan. Once the Court has determined that the

efforts of the Trustee resulted in a substantial contribution to the case, the Court must determine whether the amount of professional fees and expenses requested is reasonable. The amount of tangible benefit to the estate and creditors is a useful measure of the fees and expenses that may be recovered. The Court finds that the amount of the Trustee's request is reasonable and will permit the Trustee to recover $7,025.00 from the Debtor's estate as an administrative expense.

 In addition to the above, the Trustee seeks recovery of $11,671.50 in attorney fees for activities described as "General Administrative"; and $1,472.00 for attorney fees related to disputes concerning certain trademarks used in the business of Moltan. The Trustee also claims an additional $15,855.65 in expenses not identified to any particular matter. The Trustee has offered no explanation for how these activities benefitted the estate. The Court will not permit any recovery for these items.

 Finally, the Trustee claims that he should be permitted to recover $14,153.85 in attorney fees and expenses related to employee issues throughout the case. Of this amount, $7,476.50 in attorney fees were incurred post-confirmation in connection with claims of certain Moltan management employees to severance pay. The Trustee's pre-confirmation fees in the employment area related to claims filed by former Moltan employees who were terminated by the Trustee. As the actions of the Trustee created the cause for incurring these fees, the Court does not find it appropriate to charge the estate for reimbursement for these attorney fees. On the other hand, the Trustee's efforts on behalf of the Moltan employees who were terminated by the Debtor post-confirmation were necessary to insure the Debtor's compliance with the plan, and provided no benefit to the Trustee. These efforts provided a substantial benefit to the former Moltan employees who contributed valu-

able services to the business during the period of the Trustee's management. The efforts of these employees during a difficult transition period maintained the value of the business enterprise that was ultimately turned over to the control of the Debtor. The Court is impressed by the Trustee's sense of loyalty to these employees and finds that these efforts by the Trustee and his counsel made a substantial contribution in this bankruptcy case. The Court finds that the amount of attorney fees requested by the Trustee for these services is reasonable and will award the Trustee an additional $7,476.50 as an administrative expense.

### III.

The Court will enter its order allowing the Trustee's request for reimbursement of administrative expenses in the amount of $7,025.00 related to the negotiation and drafting of the confirmed plan and $7,476.50 incurred in providing assistance to the terminated Moltan management employees, for a total award of $14,501.50. The balance of the Trustee's request is denied for the reasons set forth in this memorandum.